Morris **RUCKLE**, Appellant,

v.

**WARDEN, MARYLAND PENITEN-
TIARY**, Appellee.

**No. 9169.**

United States Court of Appeals
Fourth Circuit.

Argued Jan. 10, 1964.

Decided June 18, 1964.

Certiorari Denied Dec. 7, 1964.
See 85 S.Ct. 330.

Haynsworth, Circuit Judge, dissented.

William L. Marbury and Lewis A. Noonberg, Baltimore, Md. (Court-assigned counsel) for appellant.

Russell R. Reno, Jr., Asst. Atty. Gen. of Maryland (Thomas B. Finan, Atty. Gen. of Maryland, on brief), for appellee.

Before SOBELOFF, Chief Judge, HAYNSWORTH, Circuit Judge, and HUTCHESON, District Judge.

SOBELOFF, Chief Judge:

Petitioner Ruckle was convicted in the Criminal Court of Baltimore City of kidnapping and armed robbery, and sentenced to 35 years' imprisonment. He later petitioned for relief under Maryland's Post-Conviction Procedure Act, claiming that he had been denied his constitutional right to be present at all stages of the trial. The trial judge, out of the presence of the petitioner, had answered inquiries addressed to him by the jury in the course of its deliberations. Another judge of the Supreme Bench of Baltimore City, sitting in the post-conviction proceeding, set aside the judgment as a nullity and ordered a new trial.

In his petition for post-conviction relief, Ruckle stated that he did not desire a new trial, and when later rearraigned before still another judge he categorically refused to accept a new trial, claiming that he was entitled to unconditional release.[1] The presiding judge then informed him that the only alternative to a new trial was reimposition of the original sentence. Ruckle declined both alternatives, insisting, as stated, on unconditional release. The judge thereupon reimposed the sentence. On appeal the Maryland Court of Appeals affirmed, reasoning that by refusing to accept a new trial, which was the only remedy available to him after the conviction was set aside, the petitioner in effect withdrew his application for post-conviction relief. Ruckle v. State, 230 Md. 580, 583, 187 A.2d 836 (1963).

Ruckle then sought a writ of habeas corpus in the District Court for the District of Maryland. That court held that Ruckle had waived his right to federal habeas corpus relief by refusing to accept the state's offer of a new trial. The petition for habeas corpus was denied, but with leave to prosecute this appeal in forma pauperis.

In this court, William L. Marbury and his associate, Lewis A. Noonberg, were appointed to present the appeal. They argue with earnestness that the judge who presided at the rearraignment should not have insisted on the defendant *accepting* a new trial as the only alternative to the reimposition of the original sentence. They contend that the defendant's acceptance of a new trial with implications of possible waiver of rights was not the true alternative to a reimposition of the sentence, for a defendant is not obliged to accept a new trial, nor is the right of the state to re-try him dependent in any way on the defendant's acceptance. When this defendant refused to accept a new trial at his second arraignment, the proper course, it is contended, was for the judge to order the

1. "Q. (Mr. Sause) [The Assistant State's Attorney] There is one question I would like to pose. Would you state, if you care to, your reason for not wanting a new trial? A. I feel there has been an error made and my sentence and judgment has been ruled by the Court of Appeals as null and void and it is illegal and I felt that if it was illegal I could get out free without having to stand a second trial, and that is one of my reasons for not wanting a new trial.

     \*     \*     \*     \*     \*

"Q. And at this time you are telling His Honor you do not want a new trial?

A. I don't want a new trial and never have wanted one in this case.

"(Mr. Sause) We request the original judgment and sentence in indictments 446 and 1023 be reimposed.

"(The Witness) I object.

"(The Court) If you do not want a new trial, I have no alternative except to reimpose the sentences.

"(The Witness) If the Court is informed the sentence and judgment is void and ruled so by the Court of Appeals I would be placed back in the penitentiary on an illegal sentence."

clerk to enter a plea of not guilty and to proceed with the trial which had been ordered at the conclusion of the post-conviction hearing.

We agree with the state's contention that when the defendant's original trial was declared a nullity, he did not automatically become entitled to release; he was still subject to retrial. But we agree also with the argument of Ruckle's counsel that his refusal to *accept* the new trial did not subject him to being resentenced upon a conviction which had theretofore been annulled. Ruckle's misapprehension concerning the consequences of his refusal to acquiesce in a new trial does not affect the legal principle involved. The effect of the refusal of a defendant to plead when arraigned is too well known to require discussion. A not guilty plea is entered for him and the case proceeds. The state does not need the defendant's consent to put him on trial, but it needs a lawful trial to convict, and a lawful conviction to sentence. The deviation from regularity which brought condemnation from the Court of Appeals of Maryland upon the original trial[2] —namely, the trial judge's answering questions addressed to him by the jury out of the defendant's presence—was slight indeed compared to the egregious procedure of passing sentence in the absence of a constitutional trial. No one may be sentenced without a valid conviction. This principle tolerates no short-cuts.

Abstract rhetoric about void and voidable convictions is not persuasive. When the Court of Appeals of Maryland annulled the conviction, the sine qua non for the sentence was obliterated, and this nullity cannot be resuscitated and made to serve as the basis for a sentence. States have wide latitude in fashioning procedures in their own courts, but no court may, consistent with the demands of due process, send a man to prison for a long term of years without first lawfully convicting him. This is more than minor technical detail; it goes to the heart of the court's jurisdiction.

It is, of course, true that a defendant may abandon his right to a new trial, and if such abandonment is made with clear understanding and voluntarily, he should be bound by it. Here the defendant did not unqualifiedly waive his right to a new trial. His refusal to *accept* a new trial was based on his expressed belief that he was entitled to unconditional release. Forfeiture of life or liberty should not be held to have occurred when the circumstances leave room for doubt as to whether the alleged waiver was fully understood, intended, and free from coercion. Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L. Ed.2d 837 (1963).

Mr. Marbury and Mr. Noonberg inform us that they have fully explained his rights to the defendant, and he adheres to his refusal to consent to a retrial and intends to plead former jeopardy if put on trial. We hold merely that he is not foreclosed from making any plea he wishes. We are not called upon in this proceeding to consider the merits of such a plea. If made, it can be dealt with at his new trial in regular course.

In the somewhat unusual circumstances of this case, we are of the opinion that it should be remanded to the District Court with directions to hold the same on the docket for a reasonable period, to afford the state the opportunity to retry Ruckle on the indictment.

The order dismissing the writ of habeas corpus is vacated and the case remanded for further proceedings in accordance with the foregoing views.

HAYNSWORTH, Circuit Judge (dissenting):

I do not see any constitutional infirmity here.

Ruckle challenged his original conviction. In that proceeding under Maryland's Post-Conviction Procedure Act,

---

2. The judge who presided in the first trial did not preside in the second.

he had no other hope of reward than a new trial. Ruckle, however, misunderstood the situation and mistakenly thought that a favorable outcome of the proceeding would produce his release. He, therefore, refused to plead when he was rearraigned, stating in most unequivocal language that he never had wanted a new trial, never had sought one, and stoutly objected to it. Indeed, he had clearly stated in his post conviction proceeding that he wanted no new trial.

Ruckle had been sentenced to thirty-five years imprisonment on charges of kidnapping and armed robbery. He could have gotten a good deal more. He may well have thought, with justification, that he did not want to risk a new trial and the possibility of a larger sentence. When he was told he was not entitled to release, I think he should have had the option to have the original sentence reimposed or to stand trial. The court gave him the choice. When he refused to exercise the option, however, I see no fault of constitutional dimension in having the court exercise it for him either way.

Ruckle's original conviction was not void. Because of trial error it was voidable, but Ruckle, himself, could have claimed the protection of the earlier judgment and prevented any possible retrial by abandoning his collateral attack upon it at any time before the collateral proceeding was finally determined. After the event, when it developed that he would not have prosecuted the proceeding in the first place if he had realized its consequence, I see no constitutional wrong done him when the court relieves him of it.

It stands reiteration that Ruckle in the post conviction proceeding clearly stated that he did not want a new trial. He had not asked for the relief granted him in the post conviction proceeding, and he undertook to overturn the order vacating the original conviction. Leave

to appeal, however, was denied.[1] Ruckle was then brought in for rearraignment, where he renewed his protestations against a new trial.

The Maryland Court of Appeals took this to be an abandonment of his post conviction attack upon the original judgment.[2] Coupled with his insistence in the post conviction proceeding that he did not want a new trial, that construction of what Ruckle did seems abundantly justified. The Court of Appeals of Maryland said:

"* * * But there is authority for the proposition that after a seasonable abandonment, or attempt to abandon, a motion for a new trial, a new trial may not be forced upon a defendant, People v. McGrath, 202 N.Y. 445, 96 N.E. 92. We think the appellant's refusal to accept the only remedy then available was, in effect, a withdrawal of his original application for post conviction relief. The holding that he was not entitled to release had become the law of the case. His only available choice was between a new trial or a return to the status quo. Refusal to accept the former was tantamount to a selection of the latter. It was implicit in the order striking out the judgments and sentences and granting a new trial on each charge that it was conditional upon the acceptance of a new trial. The action of the trial judge in reinstating the judgments and sentences was merely a recognition of the conditional nature of the order."

Thus as a matter of state law, as declared by the Court of Appeals of Maryland, the Supreme Bench of Baltimore City, which had imposed the original judgment of conviction and which later had conditionally vacated that judgment, had the power to reinstate the original judgment of conviction and the verdicts upon which it was based. That is what it did, and the original judgment of con-

1. Ruckle v. Warden, 220 Md. 683, 155 A.2d 69.

2. Ruckle v. Maryland, 230 Md. 580, 187 A. 2d 836.

viction as thus reinstated, of course, supports the new sentence. Thus, while Maryland might have found as a matter of state law that there was no conviction to support the new sentence, we have no right to say so, and if the original judgment was validly reinstated as a matter of state law, there is no basis for a contention that the state law thus applied is in conflict with the Fourteenth Amendment to the Federal Constitution.

Thus reinstatement of the original judgment of conviction and reimposition of the original sentence was an alternative open at the time of rearraignment under state law, and state law thus applied is not constitutionally invalid.

Even now Ruckle's willingness to submit to a new trial as the only alternative to service of the sentences previously imposed upon him is far from unequivocal. His distinguished court-appointed counsel have explained to him that if he prevails in this action, he need not consent to a retrial, and the majority holds that he need not, and that, upon a retrial, he can plead double jeopardy for whatever that plea may be worth. Ruckle instructed them to proceed with the appeal after having been told by his attorneys that the appeal should be abandoned if he preferred to avoid the risk of a heavier sentence which would be incurred by him in the event of a conviction following a new trial. His instructions to proceed, however, were conditioned upon his continued freedom to object to a new trial and his right to plead double jeopardy. It thus appears that now, as from the outset, Ruckle is misguided by a misplaced faith in the magic of a plea of double jeopardy, which appears from this point of view to be wholly futile and hopeless. He appears to be saying still, as he said at the time he was called for rearraignment, "I don't want a new trial and never have wanted one   *   *   *."

However, the present situation is largely irrelevant. We should look to the situation as presented to the court at the time Ruckle was brought before it for rearraignment, when, from all that then appeared, a new trial was the last thing Ruckle wanted.

Does the Constitution of the United States require a state court to force a prisoner to accept a retrial at the risk of a sentence greater than that imposed upon him after the first trial? I think not.