**UNITED STATES of America ex rel. Ernest J. BOLOGNESE E-9803, Appellant,**

v.

**Joseph R. BRIERLEY, Superintendent. No. 17488.**

United States Court of Appeals Third Circuit.

Submitted on Briefs March 24, 1969.

Decided May 28, 1969.

Ernest J. Bolognese, pro se.

Arthur Ed. Saylor, First Asst. Dist. Atty., Reading, Pa. (Robert L. Van-Hoove, Dist. Atty., Reading, Pa., on the brief), for appellee.

Before SEITZ, ALDISERT and STAHL, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

The appellant was convicted of first-degree murder by a Pennsylvania state court jury in September, 1959. Following conviction and before sentencing, his attorneys filed a motion for a new trial, alleging generally that the verdict was against the law, the evidence, and the charge of the court, and assigning error to certain portions of the charge.[1] Under Pennsylvania practice, such a motion must be filed to perfect an appeal to the state supreme court.[2]

On February 4, 1960, the appellant appeared with his attorneys before the court en banc and asked leave to withdraw the new trial motion. The pertinent record of that proceeding is:

"THE COURT: The only question at the trial was whether or not he was guilty or whether or not he was not guilty by reason of insanity.[3] The jury found against him. However, Mr. Bolognese, you did file a motion and reasons for a new trial which is presently before the Court for consideration. I have been informed by your counsel that it is your wish and desire to withdraw the motion and have it dismissed. However, in view

[1] In Pennsylvania a convicted defendant may make motions for a new trial or in arrest of judgment. The latter motion, whose breadth was expanded by the Act of June 15, 1951, P.L. 585, § 1; 19 P.S. § 871, may be employed to challenge "error appearing on the face of the record" and to test the sufficiency of the evidence to sustain the conviction. Although the motion withdrawn by the appellant was entitled "Defendant's Motion and Reasons for New Trial," and was treated as a new trial motion by the trial court, the Pennsylvania Supreme Court viewed it as both a motion for a new trial and in arrest of judgment. See Commonwealth v. Bolognese, 428 Pa. 405, 239 A.2d 307 (1968).

[2] The Pennsylvania courts have held that the failure to pursue a new trial motion following conviction precludes appellate review. In Commonwealth v. Littlejohn, 433 Pa. 336, 250 A.2d 811, 813 (1969), the court characterized the filing of a motion for a new trial as "an essential prelude to an appeal." Similarly, in

Commonwealth v. Haimbach, 151 Pa. Super. 581, 30 A.2d 653, 655 (1943), it was held that: "Defendant in this case is not entitled to a review of the sufficiency of the evidence, as a matter of right, for the reason that he withdrew his motion for a new trial in the court below. * * * No ground for arrest of judgment appears in this case and the request for a new trial having been withdrawn, the judgment must stand." See also Commonwealth v. Zelnick, 202 Pa.Super. 129, 195 A.2d 171 (1964); Commonwealth v. Donaducy, 176 Pa.Super. 27, 107 A.2d 139 (1954).

[3] It should be emphasized that although the defense of insanity was presented against the charge of murder, the defense did not contend that the accused was incompetent to stand trial. Similarly, the appellant does not assert in this appeal that the withdrawal of the new-trial motion was the result of his mental incompetence.

of the seriousness of the charge and the type of defense, the Court is of the opinion that we should explain it to you fully and have you understand that, if you desire, you have a right to have that motion for new trial processed fully and decided by the Court. On the other hand, if you are satisfied that there is no merit in it, you have a right to withdraw it. Do you understand that?

"THE DEFENDANT: I understand.

BY THE COURT:

"Q. What is your wish in that matter?

A. I want to drop the appeal for a new trial.

Q. You understand your right to go ahead if you want to?

A. I do understand my rights.

Q. You have fully considered it and you want to drop it?

A. Yes.

"THE COURT: In accordance with the expressed desire of the defendant, Ernest J. Bolognese, in open court, after the matter was explained to him, the motion for new trial may be withdrawn.

BY THE COURT:

"Q. I understand you want to be sentenced at this time?

A. That is right, Your Honor.

"THE COURT: Defendant is called for sentence.

\*    \*    \*    \*    \*    \*

"THE COURT: Is there anything the defendant desires to say before sentence is pronounced?

"THE DEFENDANT: I am satisfied I had a fair trial, and I don't have no grudge against nobody for what happened, and I want to thank Mr. Brubaker for his fairness, and thank you for your fairness, and thank my lawyers for all they did for me, and I guess that is about all I have to say."

The appellant was then sentenced to life imprisonment.

Seven years later a petition for a writ of habeas corpus was filed by the appellant in the trial court, alleging that he had been denied his right to appeal the conviction. The court refused relief and was affirmed by the Pennsylvania Supreme Court in Commonwealth v. Bolognese, *supra*. A habeas corpus petition was then filed in the district court. This too was denied.

In both state and federal post-conviction proceedings, the reviewing courts concluded, without evidentiary hearing, that there had been an intentional abandonment of the right to appeal following the 1959 conviction. This conclusion was based on a review of the original proceedings at which the new trial motion was withdrawn.

Appellant contends that his withdrawal of the new trial motion was not intelligently made and was therefore invalid under the requirements of Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) and Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed. 2d 837 (1963), that waiver be "an intentional relinquishment or abandonment of a known right or privilege." He further asserts that the court below was required to hold an evidentiary hearing on his allegation of "ignorant waiver" since no such hearing had been provided in the state collateral proceedings.

The Supreme Court has established definitive guidelines for determining when a district court must afford an evidentiary hearing to a habeas corpus applicant. In Townsend v. Sain, 372 U.S. 293, 312, 83 S.Ct. 745, 757, 9 L.Ed. 2d 770 (1962), the Court ruled:

"Where the facts are in dispute, the federal court must hold an evidentiary hearing if the habeas applicant did not receive a full and fair evidentiary hearing in a state court, either at the time of trial or in a collateral proceeding."

The guidelines established in *Townsend* were substantially incorporated by the Congress in the 1966 amendments to the state-prisoner habeas corpus stat-

ute, 28 U.S.C.A. § 2254, which now provide in part that the district court may base its adjudication of a habeas corpus application on a review of the state record which "shall be presumed to be correct." The nature and scope of this review was recently explored by this court in United States ex rel. Thomas v. Maroney, 406 F.2d 992, 995 (3 Cir. 1969) which concluded that: "If upon such review the court is satisfied that the presumption of correctness is not dissipated the petition and action may then be dismissed without further proceedings."

The court below made such a review of the state record and concluded that there was an intentional waiver of the right to appeal. We agree. In order to consider this conclusion in proper perspective, it is necessary to frame the precise issue presented against the appropriate constitutional backdrop.

■■■ We begin with the postulate that the appellant had an absolute right to seek a new trial and appeal from his conviction and judgment of sentence. That right arose, however, not from any provision of the Federal Constitution but by operation of the law of Pennsylvania.[4] There is no federal constitutional mandate compelling the states to afford an appellate review of a criminal conviction. This was recognized by the Supreme Court in Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), when the Court, speaking through Mr. Justice Black, noted:

"It is true that a State is not required by the Federal Constitution to provide appellate courts or a right to appellate review at all. See, e. g., McKane v. Durston, 153 U.S. 684, 687–688, 14 S. Ct. 913, 38 L.Ed. 867." 351 U.S. at 18, 76 S.Ct. at 590.

This same proposition was elaborated upon by Mr. Justice Frankfurter in his concurring opinion:

"The admonition of de Tocqueville not to confuse the familiar with the necessary has vivid application to appeals in criminal cases. The right to an appeal from a conviction for crime is today so established that this leads to the easy assumption that it is fundamental to the protection of life and liberty and therefore a necessary ingredient of due process of law.

'Due process' is, perhaps, the least frozen concept of our law—the least confined to history and the most absorptive of powerful social standards of a progressive society. But neither the unfolding content of 'due process' nor the particularized safeguards of the Bill of Rights disregard procedural ways that reflect a national historic policy. It is significant that no appeals from convictions in the federal courts were afforded (with roundabout exceptions negligible for present purposes) for nearly a hundred years; and, despite the civilized standards of criminal justice in modern England, there was no appeal from convictions (again with exceptions not now pertinent) until 1907. Thus, it is now settled that due process of law does not require a State to afford review of criminal judgments."

■■ Once a state affords the right to appeal, however, the operation of the appellate apparatus must comport with the provisions of the Federal Constitution. This requirement was emphasized by Mr. Justice Harlan in his dissenting opinion in *Griffin*: "Of course, the fact that appeals are not constitutionally required does not mean that a state is free of constitutional restraint in establishing the terms upon which appeals will

---

4. The Pennsylvania Supreme Court has held that by virtue of the Act of February 15, 1870, P.L. 15 § 1, 19 P.S. § 1186, there is an absolute right to appeal a murder conviction in Pennsylvania. See Commonwealth ex rel. Scoleri v. Myers,

423 Pa. 558, 225 A.2d 540 (1967) ; Commonwealth ex rel. Newsome v. Myers, 422 Pa. 240, 220 A.2d 886 (1966) ; Commonwealth ex rel. Shadd v. Myers, 423 Pa. 82, 223 A.2d 296 (1966).

be allowed. It does mean, however, that there is no 'right' to an appeal in the same sense that there is a right to a trial. Rather the constitutional right under the Due Process Clause is simply the right not to be denied an appeal for arbitrary or capricious reasons." 351 U.S. at 37, 76 S.Ct. at 599.

Thus, it was held in Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1960), that once the state affords the right to appeal, it is compelled under the Fourteenth Amendment to provide the aid of counsel to those who would otherwise be unable to afford legal assistance. Accordingly, our review in the present case must be directed toward an inquiry into whether Pennsylvania violated due process in not entertaining the Bolognese appeal.

The Pennsylvania courts have held that the right to appeal may be intentionally abandoned and effectively waived under appropriate circumstances. Commonwealth ex rel. Shadd v. Myers, *supra;* Commonwealth ex rel. Robinson v. Myers, 420 Pa. 72, 215 A.2d 637 (1966).[5]

Similarly, the Supreme Court has recognized that a defendant in a criminal prosecution may effectively waive the protection of constitutional guarantees. In Fay v. Noia, *supra,* the Court held that a "deliberate bypass" which is the "considered choice" of the defendant himself will effect a waiver. In doing so, the Court reiterated its earlier holding in Johnson v. Zerbst, *supra,* defining waiver as "an intentional relinquishment or abandonment of a known right or privilege."

■ To determine the presence of a waiver under these tests there must be some evidence of an intelligent and intentional act. At the very least, this requires an understanding by the actor

that there exists a right which is the subject of choice. One cannot waive a right of which he has no knowledge. But once this choice is comprehended, the mechanics of deliberately refusing to exercise it do not appear to be complicated. For example, the Supreme Court has indicated that a waiver of the fundamental Fifth and Sixth Amendment rights against self-incrimination and to counsel may be effected by an accused in custody by the simple expedient of declaring he knows his rights and desires to waive them. Miranda v. Arizona, 384 U.S. 436 (1965) at 475, 86 S.Ct. 1602 at 1628, 16 L.Ed.2d 694, 10 A.L.R.3d 974:

> "An express statement that the individual is willing to make a statement and does not want an attorney followed closely by a statement could constitute a waiver."

In the case before us we have no difficulty in concluding that the appellant made an intentional relinquishment of a known right.

■ In reaching this determination, we are mindful that the waiver of constitutional rights is not lightly to be inferred and every reasonable presumption against waiver must be indulged. Empak v. United States, 349 U.S. 190, 75 S.Ct. 687, 99 L.Ed. 997 (1955). This is especially true where the right abandoned—here, the right to appeal—is recognized by the State of Pennsylvania as critical in the scheme of fundamental justice. It is for this very reason that this court has carefully guarded against the indiscriminate application of waiver to defeat legitimate judicial redress.[6] Such high standards, however, should not be so sterily applied as to immunize the judicial function from the realities of a given situation. Otherwise, the

---

5. See also Ruckle v. Warden Maryland Penitentiary, 335 F.2d 336, 338 (4 Cir. 1964), where the court observed that "a defendant may abandon his right to a new trial, and if such abandonment is made with clear understanding and voluntarily, he should be bound by it."

6. See United States ex rel. O'Connor v. New Jersey, 405 F.2d 632 (3 Cir. 1969); Wade v. Yeager, 377 F.2d 841 (3 Cir. 1967); United States ex rel. Campbell v. Rundle, 327 F.2d 153 (3 Cir. 1964).

Great Writ will be transformed into an alchemist's dream, a federal elixir for what every habeas applicant considers a base state result.

The record clearly shows that in open court and in the presence of counsel, the appellant was told that he had the right to have the "motion for a new trial processed fully and decided by the court." Asked his wish, he responded "I want to drop the appeal for a new trial." The court then significantly stated "You understand your right to go ahead if you want to?" The response: "I do understand my rights."

In addition to the foregoing colloquy the appellant executed a signed statement set forth in the margin incorporating over his signature his desire to withdraw the motion and be sentenced.[7] This was capped by the following statement prior to the imposition of sentence: "I am satisfied I had a fair trial, and I don't have no grudge against nobody for what happened, and I want to thank Mr. Brubaker for his fairness and thank you for your fairness, and thank my lawyers for all they did for me, and I guess that is about all I have to say."

But that was not all he would have to say.

■ He now says that his action in withdrawing the new trial motion was meant only "to release his attorneys from the case [and] he did not know that he could not take an appeal at a later date." The record does not support this contention. It is not without significance that it was the appellant, himself—not his counsel nor any member of the court en banc—who first injected the word "appeal" in the colloquy. He said: "I want to drop the *appeal* for a new trial." Furthermore, a persuasive indication that appellant did in fact realize the finality of his action is seen in the instrument he signed authorizing his counsel to withdraw the motion. It contains the express request for the "Court to pronounce sentence." And furthermore, if the motion had been withdrawn under some impression that such action would not have precluded appellate review, it would have been reasonable to expect some attempt at appeal within a relatively short time thereafter. Instead, the appellant waited for seven years to act. He did not seek any review of his 1959 conviction until 1967.[8] This prolonged inaction is persuasive support of the hypothesis of a previous deliberate and conscious abandonment of a right to appeal.

■ Accordingly, we conclude that the district court was not required to furnish the appellant with an evidentiary platform on which to impeach his own unambiguous testimony before the state court. We hold that Pennsylvania did not impinge upon any of the appellant's constitutional rights in determining that he had intentionally abandoned and effectively waived his right to appeal.

The judgment of the district court will be affirmed.

STAHL, Circuit Judge (concurring).

I agree with the result reached here because I believe the record clearly supports the conclusion that by expressly withdrawing the motion for a new trial and asking to be sentenced, coupled with the remarks he made to the trial judge,

7. "I, ERNEST J. BOLOGNESE, defendant in the above-captioned matter, having been convicted by a jury of first-degree murder with penalty of life imprisonment, do hereby authorize and request my attorneys, John V. Boland, Esq., and Richard A. Bausher, Esq., to withdraw the Motion and Reasons for New Trial previously filed in this case on my behalf, and I do hereby consent to said withdrawal of my Motion for New Trial and request the

Court to pronounce sentence. /s/ Ernest J. Bolognese."

8. A review of the entire state record indicates that the only action taken by the appellant between the time of sentencing and the filing of the state post-conviction petition seven years later, was a request made in September, 1960 to obtain the notes of testimony.

appellant intentionally abandoned his right to have the state courts consider a direct appeal. But we should be alert to prevent problems of this nature from coming up again.

Controversies involving waiver of constitutional rights arise frequently and are often difficult of solution. In the kind of case involved here, where post-trial motions are a prerequisite to the taking of an appeal, fundamental notions of fairness require that the defendant be clearly and expressly apprised of the function of such motions and the consequences which follow if they are not made and pursued, viz., the loss of the right to appeal to a higher court. Certainly it is not requiring too much to have the trial court so inform the defendant, and such a procedure, when demonstrated by the record, would have the salutary effect of aiding habeas corpus courts, state and federal, in deciding troublesome waiver issues. Thus, I would lay down a rule that in future cases a waiver of a motion for a new trial (or its equivalent) in a criminal case may not be considered a waiver of *appellate* review unless the defendant is specifically informed by the court, or by his counsel before the court, that such consequence will follow.

As the majority opinion indicates, once a state affords the right to direct appeal in a criminal case, "the operation of the appellate apparatus must comport with the provisions of the Federal Constitution." Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), as interpreted, *inter alia,* by Comm. v. Wilson, 430 Pa. 1, 241 A.2d 760 (1968), requires, particularly in the case of an indigent having appointed counsel, as here, that the convicted defendant be apprised both that he has a right to a direct appeal and that he may have the assistance of counsel to prosecute the appeal. The command to inform a defendant of his right to appeal certainly implies the concomitant duty to

advise him that the waiver of or the failure to pursue a post-trial motion stamps out the opportunity for an appeal.[1]

courts to inform defendants of the full consequences of a guilty plea.

1. Cf. Berry v. United States of America, 412 F.2d 470 (3d Cir. 1969), in which we imposed a strict requirement on district