**UNITED STATES of America ex rel. Malachi BEARD, Jr.**

v.

**Alfred T. RUNDLE, Supt.**

**Misc. No. 69–435.**

United States District Court, E. D. Pennsylvania.

March 18, 1970.

½

Peter S. Greenberg (court-appointed), Philadelphia, Pa., for relator.

Vram Nedurian, Jr., Newtown Square, Pa., for respondent.

OPINION

JOSEPH S. LORD, III, District Judge.

Habeas corpus. Relator was tried before a jury and, on July 3, 1964, was convicted in the Court of Quarter Sessions, Delaware County, of robbery by assault and force and lesser included offenses (Bill of Indictment No. 447, June Sessions, 1964). On the same day an oral motion for a new trial, made by relator's privately retained trial counsel, was denied. Relator was sentenced to pay a fine of $200 and to serve a term of imprisonment of ten to twenty years. A written motion for a new trial was filed on July 8, 1964. In addition, on August 6, 1964, relator's counsel appealed to the Superior Court, requesting that it (1) remand the case to the Court of Quarter Sessions to enable that court to dispose of the new trial motion, and (2) continue the appeal until a decision was reached on the new trial motion. On September 15, 1964, the Superior Court directed the Court of Quarter Sessions to vacate the sentence, to hear oral argument on the motion for a new trial, and to dispose of that motion.

On October 26, 1964, the Court of Quarter Sessions denied relator's motion for a new trial. Shortly thereafter, on November 2, 1964, relator received a letter from his lawyer which read, in pertinent part, as follows:

"I am sorry to inform you that Judge Catania dismissed our motion for a new trial * * *.

"I sincerely believe that the Judge erred in several instances and that a Superior Court would so find and would order a new trial. The decision is up to you, however, and those who will be required to pay the costs and fees for the appeal to the Superior Court.

"I regret to inform you that I have not received one single penny on account of my fee for filing the appeal in the Superior Court to protect the record (and it is a good thing I did so), * * * for going up to the city of

Frackville to have the order signed by a Superior Court Judge who agreed that the bail be fixed in the amount of $7500.00 * * *.

" * * * I am also sending a copy of this letter to your wife, and your brother, * * *."

Relator was sentenced, on November 6, 1964, to the same term as originally imposed. No discussion regarding the taking of an appeal took place between relator and his counsel at the sentencing. On March 10, 1965, relator wrote to his lawyer inquiring about the progress of his appeal. Counsel responded on March 12, 1965; his letter read, in pertinent part, as follows:

"It would appear to me that the time for taking an appeal to the Superior Court has elapsed. My previous petition to the Superior Court 'to protect the record' was to permit us to argue the motion for a New Trial in the Court of Quarter Sessions of Delaware County; there was also a petition filed with the Superior Court for the purpose of fixing bail.

"I did not proceed with the further appeal to the Superior Court, as there was no indication on your part or on the part of your wife or brother when I appeared with you for sentence on Friday, November 6, 1964."

There is an involved history, dating back to 1965, of the collateral attacks relator has made upon his conviction. However, we need only note the following points: On May 17, 1967, relator filed a Pennsylvania Post Conviction Hearing Act petition in which he complained, *inter alia*, that the failure of the court or counsel to advise him of his right to free counsel on appeal deprived him of his rights under the Sixth and Fourteenth Amendments of the U. S. Constitution. An evidentiary hearing was held on April 5, 1968, in the Court of Quarter Sessions on the issue of whether or not relator had knowingly and intelligently waived his right to counsel on appeal. The Court of Quarter Sessions denied the petition on April 24, 1968, and this denial was affirmed *per curiam* in the Superior Court of Pennsylvania on March 20, 1969, with Judge J. Sydney Hoffman dissenting joined by Judges Robert Lee Jacobs and Theodore O. Spaulding. The Supreme Court of Pennsylvania denied *per curiam* a petition for allocatur on June 26, 1969.

Relator filed this habeas corpus petition on August 28, 1969. He contends that rights guaranteed to him by the Sixth and Fourteenth Amendments to the U. S. Constitution were violated by (1) the trial court's refusal to allow a proper line-up and (2) the failure of the court or counsel to advise him of his right to free counsel on appeal. We now consider the merits only of relator's second contention—the sole claim as to which relator has exhausted his state remedies as required by 28 U.S.C.A. § 2254(b).

It is, of course, true that there is no constitutional requirement that a state provide for appellate review. Griffin v. Illinois, 351 U.S. 12, 18, 76 S.Ct. 585, 100 L.Ed. 891 (1956). However, it is equally true that "[o]nce a state affords the right to appeal, * * * the operation of the appellate apparatus must comport with the provisions of the Federal Constitution." United States ex rel. Bolognese v. Brierley, 412 F.2d 193, 196 (C.A.3, 1969). In our judgment, the Constitution requires that the appellate apparatus operate not only with surface equality, but with functional equality, an equality unaffected by the state of a defendant's pocketbook. Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956); Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); Developments in the law—Equal Protection, 82 Harv.L.R. 1065, 1177–1180 (1969). Functional equality demands in part that if the rich man may have his case presented on appeal through retained counsel, then the state must see to it that the poor man has the same advantage through appointed counsel. Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963). However, the right of the indigent to

appointed counsel on appeal is empty unless it is known. The indigent may know he has a right to appeal, but unless he knows also that he has a right to free counsel, he is like a thirsty man who knows he has a right to have a pitcher, but doesn't know he has a right to have it filled. "The right to appeal at the expense of the state is mere illusion if the convicted indigent defendant does not know such a right [to free counsel] exists." *United States ex rel. Smith v. McMann*, 417 F.2d 648, 654 (C.A.2, 1969).

■ The failure of the state to advise a convicted indigent of his right to free counsel is inaction having the quality and result of affirmative action which places the poor on a different footing from the rich. The rich man knows that he can buy the services of counsel; the poor man knows that he can not. Unless the latter is told that he need not, he is effectively deprived of a right that his non-indigent counterpart has. Thus, the accident of indigency creates inequality, an inequality that is constitutionally impermissible.

In *United States ex rel. Smith v. McMann*, 417 F.2d 648 (C.A.2, 1969), the court said, at pages 654, 655:

"We think the only practical, logical and fair interpretation to be given to *Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 is that it imposes upon the state a duty to warn every person convicted of crime of his right to appeal and his right to prosecute his appeal without expense to him by counsel appointed by the state, if he is indigent. The right to appeal at the expense of the state is mere illusion if the convicted indigent defendant does not know such a right exists. And the one way to make sure that he does know is to tell him so. Such a simple and comprehensive construction avoids the complication of a variety of miscellaneous fact patterns that have no relevance whatever to the underlying principle of *Douglas v. California*, but which may frustrate and render ineffective its beneficent purpose.

\* \* \* \* \* \*

"Thus the critical findings in this case must be: Was Joel Smith indigent at the time he was sentenced by the New York State court? And, was Smith informed or did he know prior to the expiration of his time to appeal that he could appeal without cost to himself and with counsel appointed by the state? \* \* \* \* "

We recognize that some courts have reached a different result. See *Pate v. Holman*, 341 F.2d 764 (C.A.5, 1965); *Beto v. Martin*, 396 F.2d 432 (C.A.5, 1968); *United States ex rel. Bjornsen v. LaVallee*, 364 F.2d 489 (C.A.2, 1966), overruled by *Smith, supra*. With all respect, we disagree with the reasoning and results of those cases and agree with *Smith*. Since we now find (1) that Beard was indigent after his conviction; and (2) that he did not know and was not told of his right to appointed counsel on appeal, we will grant the writ conditionally.

The court is indebted to Peter S. Greenberg, Esquire, who without compensation represented the relator ably and in the highest tradition of the Bar.

### ORDER

And now, this 18th day of March 1970, it is ordered that the petition for writ of habeas corpus be and it hereby is granted. The execution of the writ will be stayed for a period of sixty (60) days to afford the Commonwealth an opportunity to appeal this decision or to permit the relator to appeal his conviction *nunc pro tunc* with assigned counsel. In the event that the Commonwealth appeals, any further stay of this Order beyond Sixty (60) days from the date hereof shall be sought only in the Court of Appeals. Absent an appeal and further stay within sixty (60) days or the grant to the relator of the right to appeal his conviction *nunc pro tunc* with assigned counsel within sixty (60) days, at the expiration of said period relator shall be released from custody.