**UNITED STATES of America ex rel. Harold PAYTON**

v.

**Alfred T. RUNDLE, Superintendent, State Correctional Institution, Graterford, Pennsylvania.**

**Appeal of COMMONWEALTH OF PENNSYLVANIA.**

**No. 72–1301.**

United States Court of Appeals, Third Circuit.

Argued Nov. 3, 1972.

Decided Dec. 21, 1972.

Marion E. MacIntyre, Deputy Dist. Atty., Harrisburg, Pa., for appellant.

Frederick W. Andrews, Pannebaker, Andrews & Yost, Harrisburg, Pa., for appellee.

Before ADAMS and MAX ROSENN, Circuit Judges and GREEN, District Judge.

## OPINION OF THE COURT

MAX ROSENN, Circuit Judge.

This is an appeal by the Commonwealth from an order granting a petition for a writ of habeas corpus in the United States District Court for the Middle District of Pennsylvania. Appellee, state prisoner Harold Payton, claims that he has not waived his right to assert in a collateral proceeding the failure of the trial court in which he was convicted to inform him of a right to free counsel to prosecute an appeal. The district court held that Payton had not waived his right to assert this claim. Because we find that appellee has no Federal constitutional right to be apprised of a right to free counsel on appeal and that Pennsylvania did not violate due process in ruling that Payton had waived his right to claim such a state-conferred right, we reverse the district court order.

Harold Payton was convicted on May 26, 1960, after a jury trial in the Court of Oyer and Terminer of Dauphin County, Pennsylvania, for the first-degree murder of his wife. On April 25, 1967, he filed a petition under the Pennsylvania Post Conviction Hearing Act (PCHA). In that petition, Payton raised a number of issues, only one of which is relevant to the present appeal.[1]

He put a check in a box on the printed PCHA petition form, claiming eligibility for relief because of:

The abridgement of a right guaranteed by the constitution or laws of this state or the constitution or laws of the United States, including a right that was not recognized as existing at the time of the trial if the constitution requires retrospective application of that right.

He also checked a box indicating a claim of denial of the constitutional right to competent counsel. In addition, on the PCHA form, Payton alleged the following facts to be true:

Petitioner was without funds or knowledge to perfect an appeal or benefit of counsel to perfect an appeal for him.

Despite making these claims in his PCHA form, neither Payton nor his counsel explicitly raised at the PCHA hearing on July 13, 1967, the issue of a court's duty to apprise him of the right to free counsel on appeal, nor did they offer any proof that Payton was indigent at that time.[2] When the denial of post-conviction relief after this hearing was appealed to the Pennsylvania Supreme Court, it found that Payton could not take advantage of Pennsylvania decisions holding that such a right existed,

since he failed to raise any claim of post-trial indigency at the hearing below. . . . A careful scrutiny of the hearing record reveals that it was never even suggested by appellant, his trial counsel, or his collateral counsel that Payton lacked the funds needed to hire a private appellate attorney.

---

1. Payton's claim that he was not told at the end of trial of his right to appeal was found without merit after his trial counsel testified at the post-conviction hearing that he had discussed the possibility of an appeal with Payton. Counsel said he had advised against appeal on the basis of a strategic evaluation of the trial. Commonwealth v. Payton, 431 Pa. 105, 244 A.2d 644 (1968). On this appeal, Payton now concedes that he was aware of his right to appeal from the murder conviction.

2. The only reference made at the hearing to Payton's financial status at the end of his murder trial came in response to questioning by counsel for the Commonwealth. Counsel asked of Payton who had paid the fees of his privately retained trial counsel. Payton replied: "My brother sold my car and they got the money, the retirement I had left out at Manbeck's, and my brother and them, they furnished the rest of it."

Commonwealth v. Payton, 431 Pa. 105, 107, 244 A.2d 644, 645 (1968).

A petition for writ of habeas corpus was filed with the United States District Court for the Middle District of Pennsylvania. The court denied relief, finding that the issue of an indigent's right to be told of his right to free counsel on appeal had not been clearly before the state court, and, thus, that state remedies had not yet been exhausted.

On April 23, 1969, appellee filed a second PCHA petition, this time explicitly alleging post-trial indigency and that he had not been apprised after his murder conviction of his right to free counsel on appeal. Dismissal of this petition without a hearing was affirmed by the Pennsylvania Supreme Court, Commonwealth v. Payton, 440 Pa. 184, 269 A.2d 667 (1970), on a finding that petitioner had failed to show that he had not intelligently and knowingly waived his right to make such a claim at the first post-conviction hearing.

Following the second denial of relief by the Pennsylvania Supreme Court, Payton once again sought a writ of habeas corpus from the Federal district court. Finding that the record nowhere indicated that Payton was aware at the post-conviction hearing of a right to be told of the availability of free counsel on appeal, the district court held that he could not be found to have waived his claim of such a right. The district court said that Pennsylvania should not have applied the rebuttable presumption of 19 P.S. § 1180–4[3] without giving Payton a hearing to rebut the presumption of waiver. It granted the writ, but stayed its execution for 60 days to allow the Commonwealth to appeal or to initiate proceedings to permit Payton to move for a new trial.

In reviewing the grant of habeas corpus by the district court, two issues are before us: (1) is there a duty under the United States Constitution for a state court to inform a defendant of the right to free counsel on appeal when the court is not aware of his indigency; and (2) whether, if such a right exists, appellee has waived his right to claim it.

■ Payton had privately retained counsel at his murder trial. If he was indigent when the trial ended, as he now alleges, this condition was never brought to the attention of the trial judge. Just before his penalty was determined, Payton testified that he had been regularly employed until a few days before the murder. Therefore, the present case is on all fours with our decision in United States ex rel. O'Brien v. Maroney, 423 F.2d 865, 870–871 (3d Cir. 1970), where we said the specific question posed was:

> Assuming appellant's indigency, and assuming further that the court was unaware of his indigency, did the court's failure to affirmatively inquire about appellant's financial status and his desire to appeal, and to appoint counsel for the purpose of appeal, amount to a denial of equal protection of the laws?

We held in *O'Brien* that the constitution and Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), did not mandate such an affirmative duty on the court. Therefore, in the present case, Payton was not denied equal protection of the laws under the constitution by the trial court's failure in 1960 to apprise him of a right to free counsel on appeal.[4]

---

3. 19 P.S. § 1180–4 provides in subsection (c):
   There is a rebuttable presumption that a failure to appeal a ruling or to raise an issue is a knowing and understanding failure.

4. In *O'Brien* our holding was limited to finding a defendant has no constitutional right to be notified of the right to free counsel on appeal when the court is unaware of or has no notice of any claim of his indigency. It was unnecessary then, as it is unnecessary now, to determine whether a constitutional right to notification of free counsel exists when the court has knowledge of indigency. The Fifth Circuit finds such a right under the latter circumstances, while agreeing with our holding that no such right

Although we hold that the right which Payton seeks to claim is not mandated by the Constitution, our inquiry is not ended. Pennsylvania has interpreted *Douglas* differently than has the Third Circuit. In Commonwealth v. Ezell, 431 Pa. 101, 244 A.2d 646 (1968), the Pennsylvania Supreme Court held that an indigent defendant could not knowingly and intelligently waive his right to appeal a conviction unless he had been informed of his right to free counsel on appeal. Although we do not find a constitutional right underlying Payton's petition for habeas corpus relief, the Pennsylvania Supreme Court would so find. *See* Commonwealth v. Payton, 431 Pa. 105, 244 A.2d 644 (1968). The issue thus becomes whether Pennsylvania violated the constitutional guarantee of due process in finding that Payton had waived at his post-conviction hearing his opportunity to raise a claim of a *state-conferred* right.

■ In examining the Pennsylvania finding of waiver, the district court applied the intentional relinquishment or abandonment of a known right standard, as enunciated in Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). There is no doubt that when the underlying claim of defendant is conferred by the Federal Constitution, the Johnson v. Zerbst standard must be applied to determine whether a defendant has waived a right to raise the claim. Fay v. Noia, 372 U.S. 391, 83 S. Ct. 822, 9 L.Ed.2d 837 (1963). It is not clear that the same waiver standard should be applied when the underlying claim is based on a state-conferred right.[5]

In Fay v. Noia a New York state prisoner sought habeas corpus relief because of the admission into evidence against him of a signed confession allegedly procured through coercion in violation of the fourteenth amendment. Noia had been denied relief in state post-conviction proceedings because he had not appealed his conviction within the time allowed by New York rules for direct appeal. The Supreme Court held that Noia's failure to appeal directly, because it was not a knowing relinquishment of constitutional rights, could not foreclose habeas corpus review. In reaching this determination, the Court weighed the state interests in an orderly system of criminal procedure against the Federal interest in protecting defendants' constitutional rights. It found: "The paramount interest is Federal." Fay v. Noia, 372 U.S. at 431–435, 83 S.Ct. 822.

The considerations that led the Court to apply the Johnson v. Zerbst standard in Fay v. Noia do not apply in the present case. The underlying right which Payton claims is not guaranteed by the Federal constitution; we have held that no such right exists. A finding that Payton waived his right to make the notice of free counsel claim does not interfere with our protection of Federal rights. On the other hand, there is a state interest in developing an

---

exists under the former circumstances. Pate v. Holman, 341 F.2d 764 (5th Cir. 1965). The Second Circuit, United States ex rel. Smith v. McMann, 417 F.2d 648 (2d Cir. 1969), on the other hand, has found in *Douglas* a constitutional requirement that defendants be notified of the right to free counsel on appeal, regardless of whether the court knows of indigency. The Seventh Circuit, United States ex rel. Singleton v. Woods, 440 F.2d 835, 836 n. 1 (7th Cir. 1971), has found a judicial duty to apprise a defendant of the right to free counsel on appeal when the court is aware of indigency, but has not ruled on the issue when the court is unaware of financial status.

5. The state-conferred right Payton claims is based on Pennsylvania's interpretation of the constitution and *Douglas*. Although we held in *O'Brien* that a state court has no affirmative duty to apprise a defendant who it does not know is indigent of his right to free counsel on appeal, our holding does not preclude Pennsylvania from finding such a duty. It does not violate a defendant's right to due process for a state court to give him more rights than the constitution requires. We therefore have no authority to prevent a state from construing the constitution more liberally in finding defendants' rights than would we.

effective system of post-conviction review. Pennsylvania has revised its post-conviction proceedings in an attempt, *inter alia,* to consolidate all post-conviction claims in one proceeding. Balancing state and Federal interests in the present case, it is the state interest which is paramount.

We faced a similar waiver issue in United States ex rel. Bolognese v. Brierley, 412 F.2d 193 (3d Cir. 1969). There, seven years after a first-degree murder conviction, a state prisoner sought habeas corpus relief claiming he had been denied the right to appeal his conviction. He contended that his withdrawal of a new trial motion following the conviction was not intelligently made and under Johnson v. Zerbst standards, did not constitute waiver of a right to appeal. Although we recognized that the right to appeal stems not from the Federal Constitution, but by operation of Pennsylvania law, we applied the Fay v. Noia/Johnson v. Zerbst knowing relinquishment standard to determine whether defendant had waived his state-conferred right of appeal. In applying this stringent standard in *Bolognese,* however, we did not fully examine whether it was necessary that this standard be applied. Our application of the strict waiver standard was premised on the principle that waiver could not be found in a manner that denied defendant due process of law. However, in that case, we did not consider explicitly what waiver standard was required by the Due Process Clause.

▮ We do not believe, after careful consideration of the issue, that the Federal Due Process Clause requires that waivers of all state-conferred rights be judged by the knowing relinquishment standard of Johnson v. Zerbst. As the Supreme Court reiterated recently:

> It has been said so often by this Court and others as not to require citation of authority that due process is flexible and calls for such procedural protections as the particular situation demands. . . . To say that the concept of due process is flexible does not

mean that judges are at large to apply it to any and all relationships. Its flexibility is in its scope once it has been determined that some process is due; it is a recognition that not all situations calling for procedural safeguards call for the same kind of procedure.

Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). When a claim of a fundamental right under the Constitution is at stake, the Supreme Court has determined that a strict waiver standard must be applied. Due process, however, does not compel the same strict standard when state-conferred rights are at stake. As Justice Harlan stated in his dissenting opinion in Griffin v. Illinois, 351 U.S. 12, 37, 76 S.Ct. 585, 599, 100 L.Ed. 89 (1956):

> Rather the constitutional right under the Due Process Clause is simply the right not to be denied an appeal for arbitrary or capricious reasons.

When a state court finds waiver consistent with its own statutory guidelines on waiver and without resorting to arbitrary or capricious reasoning, it does not constitute denial of due process. For a court to find waiver of claim to a right under such circumstances does not deprive a defendant of a right to be heard. *Cf.* Boddie v. Connecticut, 401 U.S. 371, 377–379, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971). Due process does not require that a defendant be heard twice.

Consideration of the waiver found by the Pennsylvania courts in the present case convinces us that there was sufficient evidence in the record for the state court to find a waiver without denying due process. In the first PCHA petition, Payton checked a box showing he claimed violation of constitutional rights not recognized at the time of his conviction but subsequently given retroactive effect. He also alleged at that time, his indigency, lack of competent counsel, and inability to appeal. At his hearing, Payton offered no evidence that he was indigent at the end of his murder trial,

and he failed to complain of the trial court's failure to apprise him of his right to free counsel. The post-conviction hearing judge focused Payton's attention on his claims in his petition and asked him several times to what rights he was referring. He was also specifically asked what he meant by the allegation in his petition that he had been denied the constitutional right to representation by competent counsel.[6] To none of these queries did Payton reply that he had been indigent or that he had not been apprised after trial of his right to free counsel on appeal.

In finding a waiver implicit in Payton's actions, Justice (now Chief Justice) Jones, for the Pennsylvania Supreme Court, said:

The Post Conviction Hearing Act provides that "an issue is waived if: (1) The petitioner knowingly and understandingly failed to raise it and it could have been raised before the trial, at the trial, on appeal, in a habeas corpus proceeding or any other proceeding actually conducted or in a prior proceeding actually initiated under this act; and (2) The petitioner is unable to prove the existence of extraordinary circumstances to justify his failure to raise the issue." Act of January 25, 1966, P.L. (1965) 1580, § 4, 19 P.S. § 1180-4(b) (Supp.1970). The issue of indigency was mentioned in Payton's first PCHA petition but was abandoned at the evidentiary hearing, at which hearing Payton was represented by counsel. There being no showing that Payton's failure to pursue this claim was not knowing and understanding, the claim has been waived. E. g., Commonwealth v. Black, 433 Pa. 150, 249 A.2d 561 (1969).

Commonwealth v. Payton, 440 Pa. at 186, 269 A.2d at 668–669. In effect, the court implied knowledge of the right from Payton's allegations in his petition. Finding no claim of indigency had been raised at the hearing, and further finding no allegation of extraordinary circumstances to justify failure to raise the issue, the court deemed the right waived.[7] Although the implication of

---

6. The following is an excerpt from a transcript of Payton's hearing:
   BY MR. RHOADS: [Commonwealth counsel]
   Q. All right, then again, as I understand it, your allegation with respect to the competence of counsel deals with the wounds. Does it deal with anything else other than what you have discussed here so far?
   A. The only thing, my rights, he didn't advise me of my rights to appeal—
   BY THE COURT:
   Q. What rights? What rights are you talking about? Can you answer that question?
   A. (No audible response.)
   THE COURT: All right, go on with your questions.
   BY MR. RHOADS:
   Q. What I read to you, Mr. Payton, are the three allegations of the denial of your rights. Is there anything further that you want to say to the Court about these three allegations?
   THE COURT: Or any other allegation that you have concerning your trial?
   A. Not at this moment.
   THE COURT: Well, you had better get it in the record now. This is your opportunity. All right, you may step down.
   MR. RHOADS: That is all we have.
   MR. ANDREWS: [Petitioner's counsel] That is the petitioner's case.

7. In the district court memorandum and order from which the present appeal was taken, the court found that the Pennsylvania Supreme Court had based its finding of waiver on the presumption contained in the PCHA, 19 P.S. § 1180-4 (c). See footnote 2 supra. We do not so find. The state court decision explicitly quotes only subsection (b) of § 1180-4. It makes no reference to the presumption established in subsection (c). We have found it reasonable to imply a knowing and understanding waiver, consistent with § 1180-4 without use of the presumption in subsection (c). We therefore need not reach the issue of whether use of the presumption without granting Payton a hearing on the waiver issue would be permissible, consistent with due process. See United States ex rel. Johnson v. Cavell, 468 F.2d 304, 308 (3d Cir. 1972).

knowledge of the right made by the state court might not meet Johnson v. Zerbst intelligent and knowing waiver standards, it was not arbitrary and capricious. The finding of waiver was reasonable and was consistent with the statutory framework of the PCHA.

The absence of cases involving waiver standards in connection with state-conferred rights leaves us little guidance as to the requirements of due process. A comparison of two Supreme Court decisions involving waiver in the context of a habeas corpus proceeding, however, supports our finding that due process was afforded here. In Wong Doo v. United States, 265 U.S. 239, 44 S.Ct. 524, 68 L.Ed. 999 (1924), petitioner had raised two issues in his first habeas petition. He, however, offered no proof in support of the second claim. When he attempted to raise the second claim again in a second habeas petition, the Court ruled against him, stating:

> The petitioner had full opportunity to offer proof of it [the second claim] at the hearing on the first petition, and, if he was intending to rely on that ground, good faith required that he produce the proof then. To reserve the proof for use in attempting to support a later petition, if the first failed, was to make an abusive use of the writ of *habeas corpus*.

Wong Doo v. United States, 265 U.S. at 241, 44 S.Ct. at 525. In the present case, Payton alleged his indigency in his first petition. But, like Wong Doo, he failed to support the allegation with any proof at the first hearing.

*Wong Doo* was distinguished by the Court in Price v. Johnston, 334 U.S. 266, 289–291, 68 S.Ct. 1049, 92 L.Ed. 1356 (1948). In *Price* petitioner was allowed to bring a fourth habeas corpus petition, even though the Court conceded that he might have been aware of the right he was claiming when he had filed his three previous petitions. The Court noted, that unlike Wong Doo, Price had never raised the same issue on a previous petition. The Court said he was

entitled to "present adequate reasons for not making the allegation earlier." Unlike Price, Payton did allege indigency in his first petition; his failure to offer proof of indigency at the hearing, even after careful questioning by the court and the Commonwealth to elicit all possible claims, supports the reasonability of a finding of waiver.

Since Payton's underlying claim lacks a Federal constitutional basis and since the state did not violate due process in finding waiver of a state-conferred right, Payton lacks a Federal claim. His petition for a writ of habeas corpus must be dismissed. 28 U.S.C. § 2241(c).

The judgment of the district court will be reversed and the case remanded for proceedings consistent with this opinion.