Commonwealth *v.* Eckhart, Appellant.

Submitted April 15, 1974. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Richard W. Webb,* for appellant.

*Murray Mackson,* First Assistant District Attorney, and *John Deutsch,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. CHIEF JUSTICE JONES, October 16, 1974:

Appellant was originally found guilty by a jury of first-degree murder in January 1966 and was sentenced to life imprisonment. On direct appeal, this Court

granted a new trial.[1] On September 16, 1968, appellant pleaded guilty to a charge of murder generally and was thereafter convicted by a three-judge panel of first-degree murder and sentenced to life imprisonment on December 18, 1968. Subsequently, appellant filed a pro se Post Conviction Hearing Act (PCHA)[2] petition alleging that the plea was entered because of counsel's opinion that a jury might give him the death sentence but that he would probably be found guilty of no more than second-degree murder if he would plead guilty. While this petition was pending, a second appeal was taken to this Court dealing with various alleged errors on the part of the three-judge court and we affirmed.[3] Meanwhile, the trial court informed the appellant that he should amend his PCHA petition but when no action was taken, it was dismissed.

On July 9, 1973, appellant filed an amended PCHA petition nunc pro tunc. A hearing was held on this petition on October 19, 1973, and on November 2, 1973, the trial court entered an opinion and order denying that petition. This appeal is from that order.

The only questions presented by this case relate to whether appellant's guilty plea was voluntarily and knowingly entered. Appellant initially argues that his plea was the product of his fear of the death penalty. He claims that upon looking at the jury list, his attorney suggested that a jury might very well impose the death penalty upon him. He further asserts that he was motivated to plead by his attorney's opinion that a plea of guilty would result in a conviction of no higher than second-degree murder.

As to the first point, it should be noted that appellant's guilty plea preceded our decision in *Common-*

---

[1] *Commonwealth v. Eckhart*, 430 Pa. 311, 242 A.2d 271 (1968).

[2] Act of January 25, 1966, P. L. 1580, 19 P.S. §1180-1 *et seq.*

[3] *Commonwealth v. Eckhart*, 436 Pa. 361, 260 A.2d 750 (1970).

*wealth v. Littlejohn,* 433 Pa. 336, 250 A.2d 811 (1969), in which we held, *inter alia,* that where a defendant has been convicted of first-degree murder and sentenced to life imprisonment, he may not upon retrial receive the death sentence. However, even if the events in this case had post-dated *Littlejohn,* appellant's position would not be improved. It is clear from the record of the proceedings that appellant was told by the judge that even if he pleaded guilty, he might still receive the death sentence: "Q. [By the Court] Now then, by pleading guilty, you intend waiving the right of a trial by jury, so that there is no jury going to try you, and you will be tried by the Judge? A. [By Appellant] Yes. Q. You realize that under the Rules of Court promulgated by the Supreme Court, that we are now obliged to take testimony as to whether or not the Commonwealth is able to produce enough evidence to suggest that you are guilty of First Degree Murder, which may result in imprisonment for life or the death sentence? A. Yes." Under these circumstances, appellant cannot contend that his plea was entered in order to avoid the possible imposition of the death penalty by a jury. He had acknowledged his awareness that the possibility of receiving this penalty was not foreclosed by a plea of guilty. Trial counsel and the trial court may have been mistaken in speaking about the possibility of capital punishment in light of our subsequent decision in *Littlejohn, supra.* Nevertheless, the fact that appellant was informed that the death penalty was a possibility not only if he went to trial but even if he pleaded guilty negates the contention that his decision to take the latter course was the product of his fear of receiving that penalty.

Appellant's other related argument—that his counsel's opinion that a guilty plea would result in no higher than second-degree murder conviction—is equally meritless. The transcript of the proceedings where the plea was entered simply contradicts appellant's contention:

"Q. [By the Court] You wish to enter a plea of guilty? A. [By Appellant] Yes. Q. Has this been induced by any promises made to you in any fashion? A. No, no promise. Q. Has the District Attorney made any promises to you as to what you would receive in the way of a sentence if you plead guilty? A. No. Q. Has anybody suggested that the Judge, which would be myself in this case, has in any way or in any fashion suggested that you plead guilty in return for lenience or anything of that nature? A. No. Q. Has there been any information given to you by anyone that the Court would be lenient in this matter, or had bargained in any fashion in return for a plea of guilty? A. No. Q. You are pleading guilty on your own free will, is that it? A. Yes." At the PCHA hearing, appellant stated that his answers were the result of his belief that the judge-conducted colloquy was merely "one of those formalities that the Court had to go through that—because I figured everything was cut and dry." If appellant in fact assumed this attitude toward the proceedings below, he did so at his own peril. While the trial judge has the duty of establishing the voluntariness of a guilty plea by an on-the-record colloquy,[4] in so doing, the judge must endeavor to determine that the accused actually knew what he was doing and understood the nature of the proceedings. We are satisfied that the trial judge performed his duty. We, therefore, find no basis for permitting appellant to withdraw his plea of guilty.

Judgment of sentence affirmed.

---

[4] See *Commonwealth ex rel. West v. Rundle*, 428 Pa. 102, 237 A.2d 196 (1968), and Pa. Rule of Criminal Procedure 319.

---

CONCURRING OPINION BY MR. JUSTICE ROBERTS:

I agree that the order of the hearing court dismissing appellant's PCHA petition should be affirmed. Before accepting a plea of guilty, the court has an af-

firmative obligation to ascertain not only that the plea is voluntary but also that it is understandingly,[1] knowingly,[2] and intelligently[3] tendered. The court's function is precisely to "[expose] the defendant's state of mind"[4] by determining whether the accused's answers reveal understanding, knowledge, and intelligence, i.e., that the accused knows and means what he says.

Because the record discloses that appellant was possessed of the requisite understanding, knowledge, and intelligence when he entered his plea[5] and failed to establish his entitlement to withdraw the plea, I concur in the result.

Mr. Justice POMEROY and Mr. Justice MANDERINO join in this concurring opinion.

---

[1] *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S. Ct. 1709, 1712 (1969) ; *Commonwealth v. Maddox*, 450 Pa. 406, 300 A.2d 503 (1973) ; Pa. R. Crim. P. 319(a) ; see ABA Project on Standards for Criminal Justice, Standards Relating to the Function of the Trial Judge § 4.2 (Approved Draft, 1972).

[2] *Boykin v. Alabama*, 395 U.S. 238, 241, 89 S. Ct. 1709, 1711 (1969) ; *Commonwealth v. Maddox*, 450 Pa. 406, 412, 300 A.2d 503, 506 (1973).

[3] *Boykin v. Alabama*, 395 U.S. 238, 241-42, 89 S. Ct. 1709, 1711-12 (1969).

[4] *McCarthy v. United States*, 394 U.S. 459, 467, 89 S. Ct. 1166, 1171 (1969).

[5] At his PCHA hearing, appellant testified: "Q. Did you testify that the Judge likewise told you anything about the death penalty at all on that plea of guilty? What did the Judge tell you, if anything, about your guilty plea—about the death penalty? A. He told me if I'm found guilty on first degree, he can give me the death penalty. Q. So you knew that? A. Yes, he told me that. Q. But you still entered your guilty plea? A. Yea. Q. Knowing you could get the death penalty, you entered your plea anyway? A. Well, that's what I thought at that time, but he never told me that I couldn't get it no more. He never told me that I couldn't get higher than it already was. Q. But you knew you could get the death penalty and you still entered your plea? A. Yea."