Commonwealth *v*. Falcone, Appellant.

Submitted April 24, 1970. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Thomas S. McCready,* for appellant.

*Murray Mackson,* First Assistant District Attorney, and *John Deutsch,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE JONES, October 9, 1970:

Following a jury trial in the Court of Common Pleas of Carbon County, Daniel Falcone was found guilty of first-degree murder and was sentenced, on January 29, 1955, to life imprisonment. No direct appeal was taken, but on February 11, 1969, Falcone filed a petition for the allowance of an appeal under the Post Conviction Hearing Act. An evidentiary hearing was held on May 16, 1969, at which time testimony was given by Falcone and by his trial counsel, Edmond Turtzo, Esquire. In an opinion filed January 2, 1970, the lower court dismissed Falcone's petition. This appeal followed.

The contention raised on this appeal is that Falcone did not knowingly and understandingly waive his right to appeal because: (1) he was not informed of his right to appeal (Act of February 15, 1870, P. L. 15, §1, 19 P.S. §1186) ; (2) he was not informed of his right to have the aid of court-appointed counsel to prosecute

his appeal, if indigent (*Douglas v. California*, 372 U.S. 353 (1963)); and (3) his failure to appeal was due to a fear of receiving the death penalty on retrial (*Commonwealth v. Littlejohn*, 433 Pa. 336, 250 A. 2d 811 (1969)).

As to the first point, the record is clear, as found by the lower court, that Falcone was fully informed of his right to appeal following his conviction. At the PCHA hearing, Turtzo stated that he had told Falcone that a new trial was not available simply by asking for it, that Turtzo could not find any errors which might be grounds for an appeal, but that, nevertheless, Turtzo would file Falcone's appeal if so desired. The following passage is exemplary of Turtzo's testimony: "Q. Now, in keeping with the court's ruling, Mr. Turtzo, are you able to state, in your opinion, whether or not Mr. Falcone knew of his rights to appeal, based upon your discussions with him, after the trial and up until sentencing or shortly after? A. He certainly did. After the trial, as well as many conversations held with him about that matter of appeal and the consequences, and so on, prior to the time of conviction, and we took copious notes throughout the trial, between myself particularly and Mr. Joella and the other attorneys, looking for error, as an attorney should." We affirm the finding of the lower court that Falcone knew of his right to appeal.

The second point raised by Falcone is based upon the fact that, at the time of trial in 1954 and 1955, Turtzo did not advise his client that he was entitled to have court-appointed counsel on his appeal, if indigent. The lower court made the following finding of fact, which has ample support in the record: "The evidence warrants a finding that defendant, who has employed [four] trial lawyers, was not an indigent either before or after the trial, and that post-trial motions were not

filed solely because of lack of any reason therefor, in counsel's opinion, and knowingly acquiesced therein by defendant." There is utterly no evidence that Falcone was indigent and the record indicates that Falcone, in fact, has had able, self-retained counsel at all relevant times, including the instant appeal.

The final point raised on this appeal is based upon the allegation that Falcone did not pursue his right to appeal because he was afraid that a new trial might result in the death penalty. Turtzo testified that he had informed Falcone, in accordance with the law at the time of trial, that a new trial might conceivably result in the death penalty. However, Turtzo stated clearly and unequivocally that the decision not to appeal was made solely because of the total lack of any grounds therefor. Turtzo summarized his attitude as follows: "If I had found any error, any real ground for a new trial, as we attorneys understand them, I would have been practically fearless to go through another trial. Having already gotten him life, I felt confident that it would not be death, but it was my duty to tell him that it was a possibility. If I had found anything at all upon which to predicate a motion for a new trial I would have gone right through [with] it."

In view of the evidence of record, we cannot conclude that Falcone voluntarily, knowingly and understandingly waived his right to appeal. The uncontradicted testimony that the possibility of being subjected to the death penalty in the event a new trial was granted was a factor in Falcone's determination of whether to seek a new trial contraindicates the type of waiver which would preclude him from now seeking the right to such appeal. See: *Com. ex rel. Smith v. Myers,* 438 Pa. 218, 261 A. 2d 550 (1970); *Com. v. Stewart,* 435 Pa. 449, 257 A. 2d 251 (1969); *Com. v. Littlejohn,* 433 Pa. 336, 250 A. 2d 811 (1969).

Order reversed and the matter remanded to the court below so that Falcone can file post-trial motions and, in the event such post-trial motions are dismissed, that Falcone can then file, if he so chooses, an appeal from the judgment of sentence.

Mr. Chief Justice BELL dissents.