Commonwealth *v.* Floyd, Appellant.

Submitted January 8, 1973. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Gilbert B. Abramson,* for appellant.

*James Shellenberger* and *Milton M. Stein,* Assistant District Attorneys, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE MANDERINO, May 4, 1973:

Eugene Floyd, appellant, was convicted of first degree murder in 1958. Post-trial motions were timely filed, but later withdrawn. Appellant was sentenced to

life imprisonment. In 1965, appellant filed a petition for a writ of habeas corpus challenging the voluntariness of his confession. Relief was denied and this Court affirmed. *Commonwealth ex rel. Floyd v. Rundle*, 424 Pa. 645, 227 A. 2d 497 (1967).

In 1968, appellant filed a PCHA petition alleging that he had been denied his right to appeal the judgment of sentence. Appellant asserted that he withdrew his post-trial motions because he feared the imposition of the death penalty in the event of a retrial. Relief was denied and this appeal followed.

A failure to pursue post-trial motions motivated by fear of the death penalty does not constitute a knowing and voluntary waiver. *Commonwealth v. Littlejohn*, 433 Pa. 336, 250 A. 2d 811 (1969). Even though other factors may have been present, if fear of the death penalty "was a factor" in appellant's decision to withdraw his post-trial motions he is entitled to relief. *Commonwealth v. Falcone*, 440 Pa. 61, 269 A. 2d 669 (1970).

The evidence before the PCHA court supports only one conclusion; that the failure of appellant to appeal was motivated by a fear of the death penalty on retrial. On the day appointed for argument of post-trial motions, the following colloquy took place: ". . . THE COURT: Now, is the motion still before me or withdrawn? Montemuro [Defense Co-Counsel]: I might say, Your Honor, that on Friday we had a conference at Moyamensing Prison with the prisoner and with his mother, and at that time we advised him of his rights and just *what risks were inherent in pursuing the motion for a new trial.* We further advised him, however, that any decision he made had to be his own, and at that time he advised us that he wished to withdraw motion for new trial and accept imposition of sentence by the Court. THE COURT: All right. Is that correct, Mr. Floyd? Floyd [Appellant]: Yes, sir. THE COURT: All

right. Then I shall impose upon you a sentence in Eastern Penitentiary for the balance of your natural life. *I think you may have been well advised to do what you did because information has come to me that the jury stood eleven to one for the death penalty. . . .*" (Emphasis supplied.) At the PCHA hearing the court asked and defense co-counsel William O'Brien answered as follows: ". . . THE COURT: If he says it was discussed with him, but that he didn't want to appeal because he was told he might get the chair on a new trial, would that be correct? The Witness. That would be correct, sir. . . ." The testimony of the appellant at the PCHA hearing corroborates the testimony of his attorney. ". . . BY THE COURT: Q. This is after the jury verdict? A. Yes, sir. Q. What did they say? A. Well, he told me that I could appeal my case to the Supreme Court. Q. Who told you that? A. Mr. Montemuro, and that he couldn't see me not getting a new trial. But, in the event that I did get a new trial, I could get life or the chair. BY MR. STERN: Q. In other words, is it a fair statement to say that your attorney told you that you could appeal, but that if you did appeal, there was a possibility that you would get, get the chair? A. Yes, sir. . . . BY THE COURT: Q. Did he withdraw the motions after you were convicted or don't you know? A. I told him to withdraw. Q. You told him to withdraw the motions? A. Yes. BY MR. STERN: Q. Why did you tell him to withdraw motions? A. Because he told me I could get the electric chair. Q. You thought that in the event that you received a new trial that you could get the electric chair? A. Yes, sir. . . ."

It is uncontradicted in this case that the fear of the death penalty was a significant factor in appellant's decision and also the decision of his trial counsel. Appellant is, therefore, entitled to relief in accordance with this Court's decision in *Littlejohn, supra* and *Falcone, supra.*

Order reversed and the matter remanded to the trial court to allow the appellant the opportunity to file post-trial motions.

———

DISSENTING OPINION BY MR. CHIEF JUSTICE JONES:

This case presents the question of whether a waiver of post-trial motions is knowing and voluntary if it is motivated by both the belief in the futility of raising the substantive issues involved *and* the fear of the imposition of the death penalty in the event a new trial is granted. The majority has decided that "though other factors may have been present, if fear of the death penalty 'was a factor' in appellant's decision to withdraw his post-trial motions he is entitled to relief." I disagree.

This issue was confronted in *Commonwealth v. Littlejohn*, 433 Pa. 336, 349, 250 A. 2d 811, 817 (1969): "[I]t is not clear on this record whether appellant's failure to prosecute an appeal was due to his lawyer's advice that such a procedure would be fruitless or because he was in fear of receiving the death penalty at a second trial. Therefore, the only appropriate disposition is to remand the case for a hearing on this issue. If the hearing judge should find that appellant's decision was motivated out of fear of the death penalty, then he should allow appellant to prosecute his appeal. . . ."

The record of this appellant's PCHA hearing indicates that the decision not to present post-trial motions was based to some extent upon appellant's counsel's belief that there was no sound basis for either post-trial motions or appeal.

"Q. (by Michael Mather, Assistant District Attorney for the Commonwealth): Do you recall discussing with [appellant] filing post-trial motions in his case after the jury convicted him? A. (by William J.

O'Brien, appellant's trial counsel) : I do remember, although rather vaguely, I must say. THE COURT: If he says it was discussed with him, but that he didn't want to appeal because he was told he might get the chair on a new trial, would that be correct? A. (Mr. O'Brien) : That would be correct, sir.

. . .

"Q. (by Mr. Mather) : *Did you feel there were any good grounds for appeal, any good grounds for post-trial motions? Did you feel you had a good legal position with any issue?* A. *No, I didn't particularly, I thought we had presented the alibi and the other testimony, well, the only doubt in my mind was the confession. But, I wasn't too sure of what our success would be on appeal with that.*"

Whether the right to appeal was voluntarily waived must rest upon resolution of the question whether the failure to press post-trial motions was *motivated* by fear of the death penalty. The hearing judge apparently determined, and is supported by the record, that fear of the death penalty was not the prime motivation for appellant's decision to withdraw post-trial motions. It appears rather that appellant's counsel advised him that post-trial motions and an appeal would be fruitless and the appellant acted accordingly.

I would not disturb the order of the hearing judge below. Accordingly, I dissent.