Commonwealth *v.* Butler, Appellant.

Submitted April 30, 1973. Before JONES, C. J., EA-
GEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO,
JJ.

*Richard W. Lins, Jr.* and *Alexander Ogle,* for appellant.

*Charles M. Koontz* and *Gordon E. Stroup,* District
Attorney, for Commonwealth, appellee.

OPINION BY MR. CHIEF JUSTICE JONES, October 3,
1973:

Appellant pled guilty to and was convicted on two
counts of murder in the first degree. This appeal is
taken from the imposition of two consecutive life sentences.[1]

The Commonwealth's evidence establishes the following operative facts: Marguerite Snyder, age sixty-nine,
and Mary Deremer, age sixty-seven, were proprietors
of a combination gas station, restaurant and grocery
store in Cumberland Valley Township, Pennsylvania,
known as the "Beechwood Inn." Early on the morning
of December 1, 1971, the appellant entered the Beech-

---

[1] Act of July 31, 1970, P. L. 673, 17 P.S. §211.202(1).

wood Inn and, at gunpoint, instructed Mary Deremer to "hand over the money." She balked at the appellant's demand and called into a back room to Marguerite Snyder to get a gun. Appellant shot and mortally wounded Mary Deremer, and then walked to the other room and shot and mortally wounded Marguerite Snyder.

Police investigation proved futile until February 11, 1972, when Michael Howsare, an acquaintance of George Butler, informed police that appellant admitted responsibility for the Beechwood Inn homicides in a January, 1972, conversation between Howsare and the appellant. Howsare also disclosed that certain items of evidence, including the death weapon, had been thrown into the Juniata River by appellant. On February 21, 1972, another confidant of the appellant, David Price, told police that appellant similarly disclosed his responsibility for these homicides to Price in a December 9, 1971, conversation and on that occasion revealed that the murder weapon and other inculpating items of evidence had been thrown into the Juniata River.

On the basis of information supplied by Howsare and Price, police commenced a search of the Juniata River at the location fixed by appellant's disclosures and, on March 29, 1972, recovered a .22 caliber revolver from that location. This revolver was identified as the death weapon when compared by ballistics tests to the bullets recovered from the bodies of the victims.

After the recovery of the weapon, the appellant was formally charged with murder and a warrant was issued for his arrest. He was taken into custody by state police at the Meadows Race Track in Washington County at 12:20 p.m. on March 30, 1972, and immediately advised of his constitutional rights. The appellant was taken to his apartment to change his shoes and then transported to the state police barracks in Washington, Pennsylvania, where he was fingerprinted,

photographed and fed. Thereafter, he was transferred to a district magistrate in Bedford County for preliminary arraignment and then to the Bedford County state police barracks, where he arrived at about 2:00 p.m. Approximately five and one-half hours after his arrest, at about 5:45 p.m., and immediately subsequent to a second recitation of his constitutional rights by state police, the appellant gave an oral confession which was later reduced to writing and signed by appellant.

On August 7, 1972, the appellant, with counsel, was brought before the court below to enter his plea. When he stood mute before the court, a plea of "not guilty" was entered on his behalf. Appellant was brought before the court again on August 15, 1972, when his attorneys advised the court that he wished to change his plea. On that occasion, although he did not again stand speechless when confronted with the charges against him, the appellant responded "no plea." "Not guilty" pleas were again entered on his behalf.

Twenty minutes later, the appellant returned to court a third time and pled guilty on both counts of murder. Before the pleas were entered, the court offered appellant a comprehensive explanation of the consequences of his action and engaged him in a lengthy colloquy to determine whether the intended pleading would be intelligent and knowing. The only issue before us is whether appellant's guilty pleas were voluntary.[2]

It is the appellant's position that his pleas of guilty were involuntary for the following reasons: the interval of time between the change from "no plea" to "guilty" dictated that the pleas of guilty should not have been accepted; appellant was motivated by fear of the death

---

[2] Appellant also challenges the validity of consecutive life sentences imposed upon convictions on two counts of murder in the first degree, but makes no serious argument that consecutive sentences may not be imposed under these circumstances.

penalty; appellant was motivated by the court's erroneous determination, in a July 11-12, 1972, suppression hearing, that appellant's confession was admissible and that the murder weapon and other items of evidence recovered from the Juniata River were also admissible.

Appellant urges that the twenty-minute interval between his "no plea" and "guilty" plea should have motivated the court to refuse to accept the guilty pleas he finally entered. This argument is unaccompanied by allegations of coercion from any source whatsoever. We are unwilling to find that some undisclosed influence coerced the appellant to shift his position or that the brief time interval within which appellant acted to modify his plea should have prompted the lower court to discount it.

Appellant's claim that his plea was not voluntary because he was motivated by fear of the death penalty is based upon the following colloquy with the court: "By the Court: About 15 or 20 minutes ago when you came into court, you remember, I said *Mr. Lins [appellant's counsel] said you wanted to change your plea* and at that time you stood mute, and that put them in a rather peculiar position. *They do not wish to force you to do anything you do not want to do.* I do not want them to do that and I feel sure they did not do that. I want you to say to me, *did they pressure you in the last few minutes or at any time to enter a plea of guilty?* A. No. By the Court: *Have they indicated to you at any time in their discussions since their first meeting with you that any bargain had been made with me, the court, or the district attorney, the officers or with any person as to a possible sentence that might be imposed if you entered a plea of guilty?* A. No. By the Court: What, if anything, have they or anyone else done to get you to change your plea of not guilty to a plea of guilty? Anything? A. No. By the Court: *Have you changed your plea because you were afraid the jury*

*might find you guilty and sentence you to death; I would assume that is possible, is that right?* A. *Yes.* By the Court: What did I tell you a few minutes ago? *Did you understand when I said if you were tried before me without a jury on a plea of guilty and I would find you were guilty from all the evidence beyond a reasonable doubt, I would find you guilty of murder in the first degree but I would not impose the death sentence. Is that right?* A. *Yes.* By the Court: *I also said to you that is not a good reason for you to change your plea. If you didn't do it you should never admit to it and I am going to reserve the right to withdraw those pleas if you wish. Are these pleas really made with your own free choice and own choosing?* A. *Yes.* By the Court: Do you wish to ask me any questions in connection with the case that you think I might be able to tell you? A. No." (Emphasis added.)

We are asked in this connection to vacate the appellant's convictions and sentences on the strength of an affirmative answer to the question of whether it was "possible" that the appellant was changing his plea because he feared the imposition of the death penalty. In a factual setting where police had obtained the appellant's confession, where appellant twice admitted his culpability in out-of-court statements to confidants and where these statements led police to the location of appellant's discarded weapon and items of property stolen from the Beechwood Inn, we cannot and will not strain to hold that appellant was *motivated* to enter a plea of guilty by his fear of the death penalty. The passage from the record on which we are asked to ground a reversal indicates only a possibility that appellant's guilty plea was impelled by his fear of a death sentence. But *cf., Commonwealth v. Floyd*, 451 Pa. 366, 304 A. 2d 131 (1973). It seems most probable that appellant was *motivated* by the Commonwealth's overwhelming case against him.

The appellant argues that his guilty plea was motivated by the lower court's refusal to suppress physical evidence found in the Juniata River: a .22 caliber revolver determined to be the death weapon by ballistics tests, coins stolen from the Beechwood Inn and two other weapons, one taken from the Beechwood Inn at the time of the subject homicides. Testimony from the suppression hearing indicates that on February 21, 1972, David Price disclosed to state police that George Butler had admitted his responsibility for the Beechwood homicides to Price. On the basis of Price's disclosures, Officer Tokarczyk of the state police asked Price to approach the appellant for the purpose of determining the location of physical evidence thrown into the Juniata River by appellant. It is appellant's position that because he was a "prime suspect" at the time police asked Price to obtain information from the appellant, he should have been warned of his constitutional rights by Price.

Appellant cites no authority for the proposition that *Miranda v. Arizona,* 384 U.S. 436 (1966), and *Escobedo v. Illinois,* 378 U.S. 478 (1964), should apply where an informant obtains inculpating information from a suspect before the suspect is taken into custody or otherwise deprived of his freedom of action. Appellant's suggested extension of *Miranda* and *Escobedo* is unwarranted and we reject it.

Finally, appellant attacks these guilty pleas on grounds that they were based upon an unconstitutionally obtained confession. In *Commonwealth v. Marsh,* 440 Pa. 590, 271 A. 2d 481 (1970), we determined that appellant must demonstrate *all* of the following: (1) the confession was unconstitutionally obtained; (2) the confession was the prime motivation for the guilty plea; and (3) the guilty plea was entered on the incompetent advice of counsel. *Commonwealth v. Dennis,* 451 Pa. 340, 304 A. 2d 111 (1973); *Commonwealth v. Taylor,*

449 Pa. 345, 296 A. 2d 823 (1972). Appellant does not address himself to the issue of whether his decision to plead guilty was motivated by the incompetent advice of counsel. But even if we assume that counsel advised the appellant to plead guilty, and that appellant acted on the advice of counsel, there is no reason to suspect, on this record, that the decision to advise his client to plead guilty was not a *reasonable* choice among counsel's alternatives. *See Commonwealth v. Taylor*, 449 Pa. 345, 296 A. 2d 823 (1972) ; *Commonwealth v. Sampson*, 445 Pa. 558, 285 A. 2d 480 (1971) ; *Commonwealth v. Allen*, 443 Pa. 447, 277 A. 2d 818 (1971) ; *Commonwealth v. Alvarado*, 442 Pa. 516, 276 A. 2d 526 (1971) ; *Commonwealth v. Ward*, 442 Pa. 351, 275 A. 2d 92 (1971) ; *Commonwealth v. Lovett*, 442 Pa. 105, 275 A. 2d 329 (1971) ; *Commonwealth v. Skipper*, 440 Pa. 576, 271 A. 2d 476 (1970) ; *Commonwealth v. Woody*, 440 Pa. 569, 271 A. 2d 477 (1970) ; *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A. 2d 349 (1967).

George Butler was represented by counsel in a July 11-12, 1972, hearing on a petition for the suppression of evidence at which the constitutionality of appellant's confession was challenged. After hearing, the court denied the motion to suppress. In addition to the confession, the Commonwealth had constructed a case against the appellant which included two out-of-court admissions of culpability corroborated by physical evidence obtained with the help of appellant's own disclosures to these informants. It thus appears that, if advice was offered by counsel and followed by appellant, the advice offered was not constitutionally infirm.

Since one element of the three-pronged *Marsh* test is absent, we need not consider whether the confession was unconstitutionally obtained or whether it constituted the primary motivation for appellant's guilty plea.

Judgments of sentence affirmed.

Mr. Justice EAGEN concurs in the result.

---

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

I dissent. In my view appellant's plea of guilty was motivated by a fear of the death penalty and the trial court's statement that upon a guilty plea, the court "would not impose the death sentence."

The record reveals the following exchange between the trial judge and appellant. "By the Court: Have you changed your plea because you were afraid the jury might find you guilty and sentence you to death; I would assume that is possible, is that right? A. [Appellant] Yes. By the Court: What did I tell you a few minutes ago? Did you understand when I said if you were tried before me without a jury on a plea of guilty and I would find you were guilty from all the evidence beyond a reasonable doubt, I would find you guilty of murder in the first degree but I would not impose the death sentence. Is that right? A. Yes."

Inherent in this colloquy are the same pressures on a defendant that the United States Supreme Court found unconstitutional in *United States v. Jackson*, 390 U.S. 570, 88 S. Ct. 1209 (1968). Confronted with a federal statute which permitted a jury, but not the trial judge, to impose the death penalty, the Supreme Court stated: "[T]he defendant who abandons the right to contest his guilt before a jury is assured that he cannot be executed; the defendant ingenuous enough to seek a jury acquittal stands forewarned that, if the jury finds him guilty and does not wish to spare his life, he will die. . . . The inevitable effect of any such provision is, of course, to discourage assertion of the Fifth Amendment right not to plead guilty and to deter exercise of the Sixth Amendment right to demand a jury trial." Id. at 581, 88 S. Ct. at 1216 (footnote omitted).

Because here the fear of the death penalty emphasized by the trial court's comments was the significant factor in appellant's decision to plead guilty, he is entitled to a new trial. See *Commonwealth v. Floyd*, 451 Pa. 367, 304 A. 2d 131 (1973) (failure to pursue posttrial motions).

Moreover, the plea is constitutionally infirm because by his questioning the trial judge, with his inherently unequal bargaining power, induced appellant's plea. Cf. *Commonwealth v. Evans*, 434 Pa. 52, 252 A. 2d 689 (1969). See American Bar Association Project on Standards for Criminal Justice, Standards Relating to Pleas of Guilty §3.3 (Approved Draft, 1968); American Bar Association Project on Standards for Criminal Justice, Standards Relating to the Function of the Trial Judge §4.1(a) (Approved Draft, 1972). The colloquy preceding the entry of the plea indicates most persuasively that the plea could hardly be classified as knowing and voluntary.

Since appellant, in my view, is entitled to a new trial because his plea was improperly induced, there is no need to address his additional claims of error. I would reverse the judgment of sentence and grant appellant a new trial.

Mr. Justice NIX and Mr. Justice MANDERINO join in this dissenting opinion.