420 A.2d 493

**COMMONWEALTH of Pennsylvania**

v.

**Ronald Lee BROMUND, Appellant.**

Superior Court of Pennsylvania.

Submitted March 23, 1979.

Filed May 2, 1980.

190

David R. Bahl, Williamsport, for appellant.

William S. Kieser, District Attorney, Williamsport, for Commonwealth, appellee.

Before CERCONE, President Judge, and WATKINS and HOFFMAN, JJ.

CERCONE, President Judge:

On August 31, 1977, appellant, Ronald Lee Bromund, pleaded quilty to one count of arson. Appellant was sentenced on November 30, 1977, to a term of imprisonment of not less than ten nor more than twenty years and a fine of $5,000.00. Thereafter, appellant filed a motion pursuant to Pa.R.Crim.P. Rule 321(a), challenging the guilty plea and the

legality of the sentence. The lower court ruled against appellant on these arguments, and appellant now appeals from that ruling.[1] We affirm.

In the early morning hours of February 13, 1977, four separate fires occurred within a one mile radius in the downtown section of Williamsport, Pennsylvania, between the hours of 1:20 a. m. and 6:30 a. m. Burned were the Pine Street United Methodist Church, the Trinity Episcopal Church, a three–story apartment building and the American Rescue Workers Thrift Shop. Each of these fires was determined to be of suspicious origin, and, with the exception of the Pine Street Church fire, all were labeled arson by the State Police fire investigator. The investigator was unable to determine the cause of the Pine Street Church fire only because the damage to that building was so extensive as to make such a determination impossible. The fire in the Thrift store was the last to break out and it was in that vicinity where appellant was stopped and arrested for arson. Reportedly, eyewitnesses observed appellant start this last fire by throwing a burning object into a window. It should be noted that appellant was only charged with setting the Thrift store fire and no charges were brought against appellant for any of the other three fires. Appellant was taken to jail and shortly thereafter, approximately at 9:00 a. m. on February 13, 1977, appellant spoke to his attorney, Gregory V. Smith, Chief Public Defender of Lycoming County, for about thirty minutes. Appellant again consulted with Attorney Smith on February 14, 1977 for about forty–five minutes, and it was then decided that appellant would give a

1. In its opinion, the lower court terms appellant's motion a Post Conviction Hearing Act (PCHA) petition. It is apparent from the record, however, that appellant's petition is *not* a PCHA petition, but is a motion filed pursuant to Pa.R.Crim.P. Rule 321 (governing motions for withdrawal of guilty pleas) which Rule appellant sets forth in his motion. Furthermore, we can find no PCHA petition in the record. It is apparent that the trial court was mistaken when it called appellant's motion a PCHA petition. Therefore, appellant's appeal to this court is a direct appeal and not an appeal under the PCHA.

statement to the police, in which appellant admitted his "involvement" in the fire at the Thrift store.[2]

On July 6, 1977, appellant filed a motion for a change of venue, alleging he could not get a fair trial in Lycoming County because of prejudicial pre–trial publicity. This motion was denied by the lower court. Subsequently, on August 31, 1977, appellant elected to plead guilty to the charge of arson. However, on April 17, 1978, appellant sought to withdraw his plea, arguing that it was involuntary. As previously indicated, the lower court refused to allow appellant to withdraw his plea upon which sentence was based, and appellant now appeals from that ruling.

## I.

Appellant first argues that his guilty plea was involuntary and coerced because it was the result of an allegedly improper denial of his prior motion for a change of venue.[3] Appellant contends that a change of venue was necessary because the pretrial newspaper reports were prejudicial and inflammatory, precluding appellant's receiving a fair trial. In support of his argument, appellant submitted twenty–one exhibits into evidence, all articles or photographs taken from the Williamsport Sun–Gazette, the major newspaper in Lycoming County.[4] Of these exhibits, fifteen were articles,

2. Appellant's statement was tape recorded by the police. Surprisingly, neither appellant nor the Commonwealth offered the statement itself into evidence at the hearing on appellant's motion. At that hearing, appellant indicated that in his statement he admitted that he was "involved in the fire at the American Rescue Workers." At this same hearing, Attorney Smith said that to his recollection appellant's statement "was ambiguous as to how the fire was started," but that appellant did admit that "he had something to do with the fire."

3. We note that appellant, by entering a guilty plea, has not foreclosed review of the lower court's denial of appellant's application for a change of venue. *Commonwealth v. Dobrolenski*, 460 Pa. 630, 334 A.2d 268 (1975).

4. According to the record, in 1976, the reported average daily circulation of the Williamsport Sun–Gazette within Lycoming County was 32,000 papers per day. The Sun–Gazette is published twice daily and this figure apparently accounts for both editions. It was also reported that Lycoming County had 40,000 homes in 1976.

three were editorials, two were pictures, and one consisted of several pages taken from the Sun–Gazette printed on February 14, 1977, the day after the fire.[5] The lower court found that not all of these articles and pictures pertained or were prejudicial to appellant's case, and we agree. Nonetheless, some do merit closer inspection.

Appellant's first exhibit was a copy of several pages taken from the Sun–Gazette printed on February 14, 1977. Of the fourteen pages offered into evidence, nine pages deal almost exclusively with the four fires. The lead headline on the paper reads "Pine Street Church Destroyed," then in smaller print "Three Other Structures Damaged by Fire Yesterday." Underneath the lead article and about one–quarter of the way down the page is a smaller headline that extends halfway across the page and says "City Man Charged With Setting One of Blazes," and there appears a 3″ × 4″ photograph of appellant being lead to his arraignment by a uniformed police officer. In the picture, appellant's hair is in total disarray and completely covers his eyes. Underneath the picture is the caption, "RICHARD LEE BROMUND IS LED TO ARRAIGNMENT . . . in Courthouse by Patrolman Gary Mayers." The accompanying article begins, "An admitted arsonist released from state prison only three months ago, has been charged with setting the last of four city fires yesterday morning." Then in the fourth paragraph, the article continues, "Bromund was released from the State Correctional Institution at Lakeview on November 4, after serving 26 months of a maximum 10 year sentence for four area arson fires he admitted committing in 1973 and 1974." The article went on to discuss the circumstances surrounding appellant's arrest for the Thrift shop fire and then continued at length into appellant's prior arson convictions, including a summarization of the contents of a letter written by a psychologist after appellant's first arrest in which the psychologist reported that appellant admitted setting several other fires in addition to those with which he was then charged.

5. No newspaper was printed the day of the fire because that was a Sunday, and the Sun–Gazette is not printed on Sundays.

Appellant's picture was not the only photograph on page one. There also were pictures of the fires at the Pine Street Church and the Thrift store. Inside, pages two, three, and four were completely taken up by photographs (seventeen in all) of the scene at the Pine Street Church. Similarly, on page five there were three pictures of the Thrift store fire, one of the Trinity Church fire and two of the fire in the apartment building. All told, this edition of the Sun–Gazette contained thirteen articles which discussed the fires to some extent. However, of these thirteen articles, only three mentioned appellant's name, and of these three, only one, already described in the preceding paragraph, discussed appellant's prior convictions.

The next day, on February 15, 1977, the Sun–Gazette's coverage of the four fires had decreased markedly. The lead headline treated other stories. However, there were two front page articles concerning the blazes, but one of these spoke only of the planned razing of the Pine Street Church and the other article, which primarily focused on the Pine Street Church, merely mentioned appellant as a suspect in the Thrift store fire and reported the facts surrounding appellant's arrest. Also, on the front page was a large picture of the ruins of the Pine Street Church. On page seventeen was an editorial called "Faster Justice Here." The gist of the editorial was that Lycoming County was handling criminal cases faster than it used to. The editorial opined that this fact "ought to be a message of some significance to violation prone citizens, despite the weekend outbreak of arson." Neither appellant's name nor the charges against him were mentioned in the editorial and the remainder of the editorial spoke in general terms of crime prosecution. Then, on February 18, 1977, Sun–Gazette printed an article on the front page in which a legislator called for an investigation of the Parole Board, citing the four fires of February 13, 1977. The article named appellant as an "admitted arsonist" who was out on parole when he was charged with setting the Thrift store fire. A week later, on February 23, 1977, the Sun–Gazette printed anoth-

er article on the front page about appellant, this time reviewing the testimony at appellant's preliminary hearing. Though this article began on page one, the bulk of the article was continued onto page eight, where a summary of appellant's statement to the police was reported. Though the paper did not label this statement as a confession, in substance it was appellant's confession.[6] In March of 1977, the Sun–Gazette contained only two brief articles about appellant's upcoming trial date. Both only stated the pertinent facts and neither article made the front page. Appellant's name did not appear in print again until April 20, 1977, when another article regarding the legislator's planned probe of the parole system appeared on the front page. In this article appellant was described as a "state prison parolee [who] has been charged with setting the [Thrift store fire.]" Two days later, on April 22, 1977 there appeared an article which reported that appellant intended to seek a change of venue because references to his prior convictions had appeared in print. Thereafter, the Sun–Gazette published three more small articles concerning appellant's trial date and the scheduling of psychiatric tests. In this last article, the fact of appellant's prior convictions was mentioned. In addition to the articles just listed, there also appeared six other articles which only spoke in general terms about the four fires.

Appellant argues that this publicity is of the type condemned by the Supreme Court in *Commonwealth v. Frazier*, 471 Pa. 121, 369 A.2d 1224 (1977) and that for this reason the trial court abused its discretion in refusing his motion for a change of venue. In *Frazier*, the Supreme Court delineated the standards for determining whether the pretrial publicity preceding an accused's trial will deny the accused his right to be tried by an impartial jury if change

---

**6.** The newspaper account read,

"In a later interview with Bromund at the prison, Slotter said Bromund told him he had been drinking and did not remember much prior to the Thrift store fire. Bromund told Slotter he recalled breaking a window in the Thrift store with a brick, then reaching in with a match and setting the boxes afire."

of venue is not granted. The Court said first the content of the publicity must be examined for (1) references to the accused's prior record of criminal convictions, (2) confessions or admissions of guilt allegedly made by the accused, and (3) news reports that go beyond the objective and enter the realm of the emotional and the inflammatory. *See also, Commonwealth v. Kichline*, 468 Pa. 265, 361 A.2d 282 (1976); *Commonwealth v. Pierce*, 451 Pa. 190, 303 A.2d 209 (1973). If any of these elements are present, then the trial court must assess the likelihood that a significant number of the prospective jurors in the county were exposed to the publicity. If the trial court finds that a significant number of prospective jurors have been exposed to such publicity the trial court must grant a change of venue unless "the record also indicates that a sufficiently long period of time has passed between the time of the publicity and the time of the application for a change of venue for the court to conclude that any prejudice which may have been initially created by the publicity has been dissipated." *Commonwealth v. Frazier*, 471 Pa. at 132, 369 A.2d at 1230. Extensive pretrial publicity, in and of itself, does not require the granting of a change of venue. *Commonwealth v. Casper*, 481 Pa. 143, 392 A.2d 287 (1978).

▪ Admittedly, in the instant case, a newspaper with extensive circulation published six articles which brought out appellant's prior arson convictions, and one which reported the substance of appellant's confession. Nonetheless. "[a]lthough there may have been violations of the *Pierce* [and *Frazier*] guidelines, this showing alone does not give appellant an automatic right to a change of venue." *Commonwealth v. Kichline*, 468 Pa. at 276–277, 361 A.2d at 288. See also *Commonwealth v. Nahodil*, 462 Pa. 301, 341 A.2d 91 (1975). These six particular articles were published over the course of a four month period (between February 14, 1977 and April 20, 1977). The last of these articles appeared three months before appellant's originally scheduled trial

date of July 18, 1977,[7] more than four months before appellant's new trial date of September 2, 1977, and also four months prior to appellant's guilty plea on August 31, 1977. As the lower court noted when it heard appellant's change of venue motion, the bulk of this publicity occurred within the first month following the crime. The court ruled that in the instant case, a three month lull between the date of the articles and appellant's motion was sufficient to dissipate any prejudice against appellant.[8] Under the circumstances of appellant's case, we agree. The tenor of all of the newspaper reports was objective, not hysterical or inflammatory. See *Commonwealth v. Frazier*, supra. Additionally, the lower court, though denying appellant's motion for a change of venue, granted appellant's request for a continuance, extending the time for appellant's trial by another month. We do not find that the lower court erred in denying appellant's motion for a change of venue and, accordingly, do not find any error in that court's refusal of appellant's motion to withdraw his guilty plea.

## II.

Appellant also argues that his guilty plea was involuntary because appellant felt coerced into pleading guilty after he gave a statement to police, on the advice of counsel, admit-

7. On July 2, 1977, when appellant's motion for a change of venue was heard by the lower court, appellant's scheduled trial date was July 18, 1977. Subsequent to the denial of this motion, appellant was granted a continuance of the time for trial until September 2, 1977. Appellant waived his speedy trial rights provided under Pa.R.Crim.P. Rule 1100.

 Appellant renewed his arguments concerning venue when he petitioned to withdraw his guilty plea.

8. The trial court also gave some consideration to the results of a survey conducted by the district attorney's office on the day prior to the hearing on the change of venue motion. Forty–one people were chosen at random to answer questions about their knowledge of appellant's prior convictions. The validity of such a survey, particularly such a small survey, is open to speculation and it can hardly be compared with the voir dire of veniremen in a courtroom setting where attorneys for both sides are present. Nonetheless, we find that the trial court had a sufficient basis for denying appellant's motion even absent the results of this survey.

ting that he was "involved in the fire at the American Rescue Workers." Appellant contends that his counsel was ineffective in recommending that appellant give a statement and asserts that, for this reason, he should be permitted to withdraw his guilty plea.

■ When the accused in this case wished to withdraw his guilty plea on the grounds that the plea was coerced by the existence of an unconstitutionally obtained confession, he was compelled to prove all of the following to successfully collaterally attack a plea of guilty: (1) that the pretrial confession was involuntary, (2) that the guilty plea was primarily motivated by the confession, and (3) that counsel's advice to plead guilty was not competent under the circumstances. *Commonwealth v. Williams*, 456 Pa. 377, 321 A.2d 608 (1974); *Commonwealth v. Butler*, 454 Pa. 95, 309 A.2d 720 (1973); *Commonwealth v. Marsh*, 440 Pa. 590, 271 A.2d 481 (1970); *Commonwealth v. Maute*, 263 Pa.Super. 220, 397 A.2d 826 (1979); *Commonwealth v. Reiland*, 241 Pa.Super. 109, 359 A.2d 811 (1976). In *Marsh*, the Supreme Court, citing *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 163 (1970) and *Parker v. North Carolina*, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970), wrote,

> "[A] conviction after a plea of guilty is based not on the evidence in the hands of the prosecution, which may include a pretrial confession, but rather upon the defendant's own admission in open court that he committed the crime. The key question is whether the defendant had the opportunity to make a reasonable choice. The existence of an involuntary confession does not, in itself, demonstrate that the defendant did not make a reasonable choice, and thus it cannot establish, in itself, that the plea was not intelligently and knowingly entered." 440 Pa. at 593, 271 A.2d at 483.

■ In the instant case, although appellant attempts to argue that defense counsel was ineffective for advising appellant to give a statement to police, the record of appellant's guilty plea hearing indicates that the factual basis for the Commonwealth's case rested not on appellant's pretrial

statement, but upon information supplied by eyewitnesses who saw appellant throw what appeared to be a flaming object into the American Rescue Workers Building and who observed the building catch fire. Under these facts appellant has failed to demonstrate that counsel's advice was incompetent, and moreover, under the test of *Commonwealth v. Marsh, supra,* to demonstrate that he did not have "the opportunity to make a reasonable choice" in his decision to plead guilty.[9] Consequently, we conclude that the lower court was correct in refusing to grant appellant's petition to withdraw his guilty plea.[10]

### III.

Lastly, appellant argues that his sentence was excessive because it was based in part upon an allegedly inadequate psychological report written by experts at the Camp Hill facility. Appellant contends that in the ninety days he spent at Camp Hill for observation, he only met with Mr. Truxal, a psychologist and the author of the report, for a total of fifteen minutes. Appellant further asserts that Mr. Truxal took a personal dislike to appellant and that this alleged dislike resulted in Mr. Truxal's writing a "hostile diagnostic evaluation." In response to this argument, the lower court in its opinion noted that the Camp Hill report was based on at least two interviews with the psychologist and five psychological tests. Furthermore, the court went on to point out that it primarily based its sentence upon the gravity of the offense and appellant's prior record of arson convictions,[11] although it did not completely discount the Camp Hill report.

9. As a matter of fact, appellant did not assert that counsel advised him to plead guilty, although, in light of the overwhelming evidence of appellant's guilt such advice would have been prudent.

10. Appellant also argues that the joint effect of the denial of his motion for a change of venue and the fact of his pretrial statement coerced appellant into pleading guilty. We do not find these contentions to have any more merit conjunctively than they did separately.

11. At the sentencing hearing, the court noted that appellant was released on parole for his prior arson conviction on November 4,

 Generally, the imposition of a sentence is within the discretion of the trial court and is left undisturbed on appeal because the trial court is in a better position to weigh the factors involved in this determination; however, this discretion must be exercised within certain procedural limits, including the consideration of sufficient and accurate information. *Commonwealth v. Martin*, 466 Pa. 118, 351 A.2d 650 (1976); *Commonwealth v. Valentin*, 259 Pa.Super. 496, 393 A.2d 935 (1978). In the instant case, appellant contends that Mr. Truxal's evaluation was based solely upon one fifteen minute interview with appellant. The trial court, however, indicates that such was not the case, that certain psychological tests were also administered to appellant. Additionally, the transcript of the sentencing hearing indicates that the trial court also reviewed the psychological report prepared by Danville State Hospital subsequent to appellant's prior arson conviction, and other information as well.

We cannot accept appellant's contention that the Camp Hill evaluation was invalid or inadequate, and we do not find appellant's sentence to be excessive for this reason.

Accordingly, we affirm.

1976 and that it was only three months later, on February 13, 1977, that appellant committed the present arson offense.